JANVIER, Judge.
The plaintiff corporation, a wholesale dealer in milk and other dairy products, brought this suit, praying for a judgment in the sum of $520, representing the balance alleged to be due on open account for “goods purchased by defendant corporation between August 2, 1957 and January 29, 1958.” Attached to the petition and filed with it is a sworn statement of account between plaintiff and defendant.
Defendant filed answer categorically denying each of the three articles of the petition. While it is not definitely shown *810 in the record, it is indicated that, because of the filing of a general denial in a suit on an open account, defendant was not permitted to introduce evidence and there was judgment in favor of plaintiff and against defendant as prayed for.
A new trial was granted defendant, and there was then filed an answer in which defendant admitted that it had purchased certain quantities of milk for which it averred that it had paid in full the sum of $2,483.
Defendant then alleged that the balance of $520 claimed to be due for “goods” sold and delivered, in fact, represented a “charge for fifty-two milk cans arbitrarily priced at $10 per can.” Defendant denied that it had agreed to purchase cans and averred that it had “returned all milk cans conspicuously tagged with defendant’s name, to the same point to which plaintiff delivered them and from which point plaintiff agreed to recover said cans.”
After a second trial there was judgment for plaintiff as prayed for, and defendant has appealed suspensively.
The record, and particularly certain statements of account of plaintiff which were sent to defendant and which were introduced by defendant, make clear the method which was adopted by plaintiff in carrying out its contract to deliver milk to defendant and to which method defendant, during the five months involved, apparently made no objection.
The defendant, J and H Food Service, Inc., was employed by an oil drilling corporation, which is in no way involved in this controversy, to furnish the necessary food for the employees of the drilling corporation which was engaged in drilling oil for the production of petroleum products on a drilling “rig” in the Gulf of Mexico which could be reached only by boats and which boats operated between the drilling rig in the Gulf and a settlement known as Empire, in the Parish of Plaquemines. In transporting the necessary mechanical and other articles required, the drilling corporation employed still another concern which operated a motor barge known as “Mister Arthur”. The operator of this barge is in no way involved in this litigation.
The milk needed by the defendant was delivered by the plaintiff in five-gallon cans to this barge and by the barge was transported from Empire to the drilling rig. The empty cans were taken back by the barge to Empire
It very obviously was the custom established by the plaintiff that it would charge the defendant the current price for milk and would also charge against each delivery $10 for each can and that, on the return of each can, it would give to the defendant credit for the arbitrarily fixed value on the can. In other words, as each five-gallon can of milk was delivered, there would be a charge of the current price for the milk and $10 for the can.
According to the documents to which we have referred, the charge for each delivery of five-gallons of milk would then be paid for by check for the value of the milk and the return of the can. That this was the established custom is made very clear and, as stated, there is nothing to show that there was any objection to this custom until the parties came to a parting of the ways, at which time, according to the records of plaintiff, there were 52 five-gallon cans which had not been returned to it. It is not shown that each can was in fact worth $10, but it is shown that some were in better condition than others and that some were worth more than $10 and some less, and we think that, from the fact that no objection was made, it was established that $10 did represent a fair average charge for each can.
Thus, though the petition of the plaintiff presented a claim on an open account for milk and cans sold, the answer of defendant admitted everything claimed except that it averred that it had not agreed to pay $10 for each can. Defendant also averred that it had returned all cans “to the same point * * * from which *811 plaintiff agreed to recover said cans,” When defendant did not deny that the cans had been received and averred that it had returned all cans to the plaintiff, it took upon itself the burden of establishing this fact and it has not successfully borne that burden.
It is true that the defendant produced two witnesses for the purpose of showing that all of the cans had been returned to the plaintiff. One of these witnesses, Clarence Montecino, testified that he was a “flunkey” on the drilling barge and that, as soon as each can was emptied, a tag was put on it and that it was put on the platform to be returned to Empire. He had no knowledge at all as to whether the cans were actually taken back to Empire, nor to what was actually done with them if they were taken to Empire. The other witness who testified concerning the return of the cans was Mr. Harvey B. Elder, Jr., who was a “stockholder,, secretary-treasurer, general manager” of the defendant corporation. He was asked whether to his knowledge all the cans delivered to the defendant were returned to Empire, and he answered: “To my knowledge they were.” He stated, however, that he had no receipts for any of them, and a careful reading of his testimony indicates that all he meant to say was that he had no reason to believe that any of the cans had not been returned.
We repeat that the evidence fails to show that the cans were returned to the plaintiff corporation.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.