# APPELLATE DIVISION

OF THE

# SUPREME COURT

OF THE

## State of New York.

---

PRESSPRICH & SON COMPANY, Appellant, *v.* NEMOURS TRADING CORPORATION, Respondent.

First Department, December 16, 1921.

Principal and agent — action to recover commissions — complaint alleging procurement of executory contracts of sale of sugar for exportation subject to cancellation if exportation not permitted — complaint not stating cause of action where there is no allegation of permit to export — contracts were executory agreements for purchase and sale — commissions not due till permit issued.

Complaint in an action to recover commissions alleged to be due to the plaintiff on the sale of sugar does not state facts sufficient to constitute a cause of action, which alleges merely that the plaintiff procured certain contracts for the sale of the sugar, where it appears from the contracts annexed to the complaint that the defendant was to be relieved from the contracts in case an embargo was placed on the exportation of the sugar or in case no permit for each exportation could be procured, and it is not alleged that government licenses were granted permitting the exportation of the sugar in question.

The contracts in question were executory agreements for the purchase and sale of the sugar, notwithstanding that they opened with the customary words used in brokers' notes: "We have this day sold * * * for the account of * * *," etc.

The plaintiff was not entitled to any commissions on the alleged sales until such time as the government permitted the exportation of the sugar sold.

APP. DIV.— VOL. CXCIX.        1

APPEAL by the plaintiff, Pressprich & Son Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 18th day of May, 1921, denying plaintiff's motion for judgment on the pleadings and sustaining defendant's demurrer to the complaint herein.

*Man & Man* [*Henry H. Man* of counsel], for the appellant.

*White & Case* [*Vermont Hatch* of counsel], for the respondent.

GREENBAUM, J.:

The demurrer was interposed on the ground that the complaint did not state facts sufficient to constitute a cause of action. The complaint alleges that on January 13, 1920, "defendant employed the plaintiff, in writing, to sell for it certain sugar," under the terms of a letter, which reads: "We hereby offer you the undernoted firm until 12 m. Jan. 17th:

| 2000/2500 | tons | Canadian | Granulated, | Feb. | shpt., | at 12.75¢ | fob | St. John |
|---|---|---|---|---|---|---|---|---|
| 2000 | " | " | " | Mar. | " | " | | |
| 2000 | " | " | " | Apr. | " | " 12.50¢ | " | " |
| 1000 | " | " | " | May | " | " 12.50¢ | " | Montreal |
| 3000 | " | " | " | June | " | " 12.50¢ | " | " |
| 3000 | " | " | " | July | " | " 12.50¢ | " | " |

subject to irrevocable letter of credit being established in New York American funds immediately after signing of contract, also subject to license to export being granted by Canadian Government. If export prohibited by Canadian Government, contract to be cancelled. We to pay you 10 cents per 100 pounds selling commission on any sales made by you.'"

The complaint further alleges that before noon of the 17th day of January, 1920, plaintiff procured "purchasers ready, willing and able to purchase said sugar upon the terms and conditions set forth in said contract of employment above set forth;" that defendant entered into written contracts with the purchasers thus procured by plaintiff, copies of which are annexed to the complaint, marked Exhibits A, B and C, and which were also signed by the plaintiff as broker for the defendant; and that "by reason of the procuring of such contracts the plaintiff has earned commissions payable by

the defendant amounting to " $29,120, of which $6,720 has been paid.

The contracts annexed were executory agreements for the purchase and sale of merchandise, notwithstanding that they open with the customary words used in brokers' notes: " We have this day sold  *  *  *  for the account of Nemours Trading Corporation," etc.  The concluding paragraph of each of these contracts reads: " Sellers are relieved of any liability under this contract in case the Government of Canada places an embargo on the exportation of sugar from the country, or in case no permit for *each* [italics ours] exportation can be obtained by either sellers or buyer, this contract is cancelled."

Exhibit "A" provides for one shipment during February, 1920; Exhibit " B " for four separate shipments during April, May, June and July, 1920, respectively; and Exhibit " C " for one shipment during March, 1920.

There is no allegation in the complaint as to whether the Canadian government granted licenses to export the goods in question or prohibited export of the goods mentioned.  The theory of the pleader, as alleged and frankly stated in respondent's brief, is that the plaintiff's commissions were earned upon the procurement of the written agreements, when they were duly signed by and exchanged between the defendant and the respective buyers.  We are thus called upon to determine whether the complaint sufficiently shows that the plaintiff as broker earned his commissions upon the procurement of the approved written contracts for the sale of the merchandise above mentioned, regardless of the fact that a Canadian governmental ban might prevent an actual sale of all or some of the merchandise, and thereby annul the agreements in whole or in part.  In other words, what interpretation is to be given to the various written agreements set forth in the complaint?

In the absence of an agreement that a broker's commission is not to be payable until an actual sale of merchandise has been effected, the rule is where nothing is stated as to when the commission is payable, that the broker would ordinarily be entitled to commission upon his procurement of an executory agreement for the sale of the goods signed by seller and buyer,

unless under such an agreement there is a custom of the trade to the contrary.

Under section 82 of the Personal Property Law (as added by Laws of 1911, chap. 571), as well as under the common law, the agreements obtained for the plaintiff were not sales. They were conditional executory contracts to sell and buy, which might never ripen into sales. There is a marked distinction to be observed between the two so-called subject clauses. The first expresses a condition to be performed by the buyer. The failure on his part to procure the letters of credit as agreed would constitute a breach of his contract with the seller, and would not affect the broker's right to the payment of his commissions. But the second subject clause refers to a matter which was beyond the control of both seller and buyer. It relates to a condition which might prevent the consummation of a sale. Indeed, in the event of the inability to procure a license to export from the Canadian government, the contract between the plaintiff and defendant, as well as the several agreements to sell, would automatically become as naught. The parties, plaintiff and defendant, as well as the willing purchasers, clearly must have had in mind that the contracts of sale would become ineffective as though never made, if export from Canada was impossible.

The rule stated in *Condict* v. *Cowdrey* (139 N. Y. 273, 280, 281) is in principle applicable to the facts of the instant case. There the buyers of real estate " availed themselves of the privilege, which they had reserved, to recede from the propositions to purchase, upon a specified contingency, which happened, and it was not the fault of the defendant that the bargain was never closed." Said the court at page 280: " By the contract between the plaintiff and defendant he was not entitled to commissions, unless there was an actual sale of the property effected through his agency. It must appear to have been a binding and enforcible agreement for the sale and conveyance of the land; and it is not sufficient to show a provisional arrangement which has failed because of the non-fulfillment of a condition not dependent upon the action of the vendor. This is not a case where the owner refused to consummate the sale after the broker had found a purchaser upon the terms originally proposed, or where the vendor has been unable to

give the stipulated title on account of some defect in it, either known at the time the contract was executed, or subsequently discovered. [Citing cases.]   There was no failure on the part of the defendant to abide by her offer or agreement to sell."

By analogy, it would seem that there was no intention in the instant case that any commission should be earned in case of the happening of the condition in question.

The order appealed from should be affirmed, with ten dollars costs and disbursements, with leave, however, to plaintiff to serve an amended complaint upon the payment of said costs and ten dollars costs of motion at Special Term.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Order affirmed, with ten dollars costs and disbursements, with leave to plaintiff to amend complaint on payment of said costs, and ten dollars costs of motion at Special Term.