Walter R. Hart, J.
Plaintiff, a real estate broker, has recovered judgment in the court below in an action for commissions. The complaint therein alleges that defendant employed plaintiff to sell certain property for it and agreed to pay a 5% commission; plaintiff procured Rosen and Pirozzi, a copartnership who were ready, willing and able to purchase the premises on terms agreeable to defendant; that defendant entered into a written contract of sale with said partnership wherein plaintiff was named as the broker and that thereafter without any fault on the part of said copartnership, defendant “failed and/or refused to sell the premises for the price and upon the terms and conditions set forth in the contract.”
In his bill of particulars, plaintiff further alleges “ defendant failed to deliver title to purchasers in accordance with the terms of the written contract of sale.”
On the trial, plaintiff testified that after a series of conversations held between him and a Mr. Brennan, on behalf of defendant, it was orally agreed that he would be paid 5% commission if he procured a customer at a price of $44,000. He thereupon instructed Mr. Brennan to draw a contract of sale to Rosen and Pirozzi. After the contract was drafted it was given to him without any comment, unsigned by defendant, for delivery to and execution by the vendees, together with two unsigned copies of a separate brokerage agreement. Though *506 he delivered the contract of sale to the vendees, which was eventually executed by them in his absence, he never executed the separate brokerage agreement or delivered a signed copy of it to the defendant.
The contract of sale and then the brokerage agreement were admitted in evidence on plaintiff’s offer. After the brokerage agreement was admitted in evidence, plaintiff’s counsel requested that it be deemed in evidence only for the limited purpose “ of showing the intent of the defendant as to the amount” of the commissions. Defendant objected to such limitation, whereupon the trial court stated: “It’s already in evidence without limitation.”
The contract of sale provides: ‘ ‘ The parties agree that Andrew A. Burkard brought about this sale and the seller agrees to pay a brokerage commission therefor, pursucmt to a separate agreement.” (Emphasis supplied.)
In addition to the foregoing provision, the contract of sale provided that the vendees be permitted to make test borings to determine whether the bearing value of the subsoil was suitable for the construction of two-family homes and if found unsuitable the vendees had the option to cancel the contract if unsuccessful in procuring the consent of a prior grantor to the cancellation of a covenant which required the erection of a concrete and stone retaining wall in the event there was a change of grade.
The separate unsigned brokerage agreement, which was delivered to plaintiff simultaneously with the contract of sale and execution by the purchasers, provides as follows:
“In consideration of the sum of One Dollar and other good and valuable consideration to the undersigned in hand duly paid by Midvale Estates, Inc. the undersigned hereby agrees to take and accept as and for his commissions the sum of Two Thousand Two Hundred ($2,200.00) Dollars, for services rendered as Broker in bringing about the sale of the premises which are the subject of the contract of sale bearing even date herewith between Midvale Estates, Inc., as Seller and Rosen and Pirozzi Inc. as purchasers, effecting premises on 66th Drive and 70th Street in Middle Village, Queens County, City and State of Hew York.
“It is understood and agreed by the undersigned that the Seller shall incur no obligation or liability for said brokerage commissions excepting only when, as and if and in the event title actually closes, pursuant to the terms of the aforementioned contract, at which time the said brokerage commissions shall become due and payable.
*507 ‘ 1 If however, title does not close due to wilfull default on the part of the Seller, the undersigned shall he entitled to the aforementioned brokerage. ’ ’
The record is barren of any evidence as to why title did not close. There is simply a stipulation in the record that title to the premises did not close. Defendant, at the trial offered no evidence and chose to rest on plaintiff’s case.
It is to be observed that while the complaint and bill of particulars allege that defendant failed and/or refused to close title not a scintilla of evidence was offered to sustain such allegation.
This case was here on an earlier appeal in the September 1962 Term, wherein we affirmed the denial of a motion by plaintiff for summary judgment, ruling that there was an issue of fact as to whether the failure to close title was due to defendant’s “ wilfull default.” This issue was not explored on the trial of the action. For aught that appears in the record, title did not close because the vendees elected to cancel the contract for the failure of either of the conditions above stated.
A broker under such circumstances would not be entitled to commissions. The applicable rule is set forth in Condict v. Cowdrey (139 N. Y. 273). In that case plaintiff broker was employed by defendant to sell certain real estate and negotiated a contract for the sale thereof. The contract of sale provided that if the vendor’s title proved unsatisfactory to the purchaser’s attorney, the contract would be void. The vendor’s title did prove unsatisfactory so that the contract of sale became of no effect. The plaintiff broker claimed he was nevertheless entitled to a commission. The Court of Appeals in rejecting this contention stated (pp. 280-281): “It must appear to have been a binding and enforcible agreement for the sale and conveyance of the land; and it is not sufficient to show a provisional arrangement which has failed because of the non-fulfillment of a condition not dependent upon the action of the vendor. This is not a case where the owner refused to consummate the sale after the broker had found a purchaser upon the terms originally proposed, or where the vendor has been unable to give the stipulated title on account of some defect in it, either known at the time the contract was executed, or subsequently discovered. (Duclos v. Cunningham, 102 N. Y. 678; Sibbald v. Bethlehem Iron Co., 83 id. 378; Knapp v. Wallace, 41 id. 477; Bernard v. Monott, 1 Abb. Ct. App. Dec. 110.) There was no failure on the part of the defendant to abide by her offer or agreement to sell. The negotiations failed because the buyers availed themselves of the privilege, which they had *508 reserved, to recede from the propositions to purchase, upon a specified contingency, which happened, and it was not the fault of the defendant that the bargain was never closed.”
In Hardy & Ruperti v. Neuss, Hesslein & Co. (211 App. Div. 697, 699-700) the court stated: “The general rule applicable to this class of cases is thus stated in Mechem on Agency (Vol. 2 [2d ed.], p. 2034, note); ‘ Where the buyer produced by the broker reserves to himself the right to withdraw from the contract upon the happening of a certain contingency, having no connection with the fault of the principal, and does withdraw because that contingency happens, the broker has not earned his commission.’ ” (See, also, Ward v. Kennedy, 51 Misc. 422, affd. 122 App. Div. 890.)
In Hubbard v. Tobin (15 Misc 2d 65) a real estate broker was aware that his prospect’s interest in a lease was conditioned upon a required change of zone and that a written lease was executed for the purpose of demonstrating to the village officials the bona fide interest of the proposed tenant in connection with an application for change of zone. The lease was subject to an oral agreement between the counsel for the respective parties that the agreement would not be effective unless the premises were rezoned. The agreement between the prospective landlord and the broker was that he would be paid ‘ ‘ upon the signing of the lease. ’ ’ Thereafter an application for change of zone was denied and the lease as between the parties remained ineffective. It was held that the broker was not entitled to commissions and his complaint in an action therefor was dismissed. The court stated (pp. 67-68): “In order that a broker who is engaged to sell or lease real property may earn and be entitled to his commissions, it must appear that he procured and produced a prospect ready, willing and able to buy or lease the owner’s premises on terms prescribed by or satisfactory to the owner; and unless the owner, by his refusal to proceed with the transaction, prevents the prospect from so doing, it is necessary that said prospect manifest his willingness and ability to buy or lease by entering into a binding and enforcible agreement or lease. In the light of these basic requirements, the general rule is well settled that unless the transaction is carried out or the instrument evidencing the same becomes absolute, a broker is not entitled to commissions for negotiating a contract or lease which is conditioned upon the happening of a certain contingency having no connection with the fault of either the owner or the respective buyer or lessee.” (Emphasis supplied.)
*509 Where, as here, the contract between the vendor and vendee is conditional, it is incumbent upon the plaintiff to allege and prove the conditions precedent to the defendant vendor’s liability (Pressprick & Son Co. v. Nemours Trading Corp., 199 App. Div. 1, affd. 233 N. Y. 610; cf. Stern v. Gepo Realty Corp., 289 N. Y. 274; Amies v. Wesnofske, 255 N. Y. 156, 161), or the facts constituting defendant’s lack of good faith and the willfullness of his default.
It cannot be gainsaid that plaintiff was aware of the conditional nature of the contract of sale or of the nature of the brokerage agreement, since both of these documents were handed to him simultaneously when he called at defendant’s office to pick up the contracts of sale for delivery to the attorneys for the prospective vendees. He made no protest as to the provisions in either agreement but simply delivered the contract of sale to the vendees’ attorney and retained possession of both copies of the brokerage agreement. It is my opinion that in view of the conditional nature of the contract of sale, that an integral part thereof and an important one in the bringing about of the meeting of the minds of the parties to the sale, was the provision in the brokerage agreement that defendant vendor would not be liable for commission except for its willful default. It is reasonable to assume that absent plaintiff’s acquiescence therein defendant would not have exposed itself unconditionally to liability for brokerage commissions with respect to a contract which afforded the vendees options to cancel the agreement, unless defendant qualified plaintiff’s rights to the commission. It is also fair to assume that plaintiff, from the documents in his hands, was aware of this fact and that the first thing he would look to in the contract of sale was a reference to the provision stating who the broker was and the provision for compensation. By remaining silent and delivering the contract of sale to the vendees for signature, he is deemed to have acquiesced in the terms of the brokerage agreement and should now be deemed estopped from asserting the contrary.
As stated in White v. La Due & Fitch (303 N. Y. 122, 128): ‘ ‘ The principle of estoppel ‘ prohibits a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice.’ (Rothschild v. Title Guar. & Trust Co., 204 N. Y. 458, 464; see, also, Selzer v. Baker, 295 N. Y. 145, 149.) ”
As was observed in Metropolitan Life Ins. Co. v. Child’s Co. (230 N. Y. 285, 292) and quoted in Lynn v. Lynn, 302 N. Y. *510 193, 205): “An estoppel, it has been said, ‘ rests upon the word or deed of one party upon which another rightfully relies and so relying, changes his position to his injury. ’ ”
The defense of estoppel is available to a defendant in a law action (Susquehanna S. S. Co. v. Andersen & Co., 239 N. Y. 285).
Clearly defendant here changed its position and was induced to execute this conditional agreement by the conduct of the plaintiff.
It is elementary that before a broker is entitled to recover from a vendor for commissions he must prove that he procured a purchaser ready, willing and able to consummate the transaction. Here, there was no such proof offered. Plaintiff elected to rest on the legal principle that since defendant entered into a written agreement the necessity for such evidence was dispensed with. If the contract of sale is to be deemed the substitute or the equivalent of the required evidence, then all of its provisions, including the reference to the “ separate agreement ” of brokerage and the brokerage agreement itself, also form part of the record. As heretofore noted, the trial court specifically stated the brokerage agreement was in evidence “without restriction.” This ruling by the trial court was valid and is authoritatively supported. The rule is phrased in Corpus Juris Secundum (vol. 32, Evidence, pp. 699-700, §§ 774-775):
‘1 A book or document .offered in evidence * * * must as a general rule be considered in its entirety, the parts operating against the interest of the party offering it as well as the parts in his favor.” (§ 774.)
11 Documentary evidence properly admitted in a case, regardless of by whom it was introduced, may, as a general rule, be weighed and considered for or against either party, and, although it is introduced to prove a particular fact, or for a particular purpose, it becomes substantive evidence in the cause and may be used by the adverse party for other purposes; * * * Accordingly it has been held that a party is not entitled, by an express qualification at the time of introducing a document, to restrict its effect as evidence to a definite purpose, but he is compelled to offer it for what it is wbrth as evidence generally”. (§ 775.) (Emphasis supplied.)
This principle of law is exemplified by the holding in Brandt v. Public Bank (139 App. Div. 173, 174—175) where the court stated: “ The rule is that if a party uses books of account or other papers against his adversary, he makes them evidence for him on the same subject. They are like any declaration or admission, by writing or orally; if part is used, the whole *511 relating to the same matter is admissible (Pendleton v. Weed, 17 N. Y. 72, 76; Dewey v. Hotchkiss, 30 id. 497, 500), and, being in the case, they must be given force.” (Emphasis supplied.) (See, also, Winants v. Sherman, 3 Hill 74.)
Since the brokerage agreement here was introduced by the plaintiff, it became “ substantive evidence ” in the case.
Plaintiff in his complaint pleaded that defendant ‘1 failed and/or refused to sell the premises for the price and upon the terms and conditions set forth in the contract of sale.” This then, was the theory of Ms cause of action. It was also the basis for his motion for summary judgment. In spite of our conclusion on the prior appeal, where we affirmed a motion for denial of his summary judgment, he failed to produce an iota of evidence to sustain that theory and to establish defendant’s “ wilful default ” which was a condition precedent to establish plaintiff’s right to commissions under the provisions of the brokerage agreement introduced by him in evidence at the trial. Defendant was entitled to rely on the holding of this court, that the issue of fact as to the willfullness of tMs default was to be resolved at the trial. Defendant was also entitled to rely on the trial court’s ruling that the brokerage agreement was “ in evidence without limitation ” and conclude that plaintiff’s failure to establish the conditions precedent to his liability constituted a failure to make a prima facie showing of a right to recover. However, since it appears that plaintiff may establish that title did not close due to a willful default on defendant’s part, the interests of justice will be served by directing a new trial.
The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.