Raymond L. Wilkes, J.
This is an action by a real estate broker to recover a commission in an nnconsummated real estate transaction wherein the plaintiff’s brokerage agreement with the defendant vendor (delivered to the plaintiff contemporaneously with the proposed contract of sale) remained unex *404 eeuted, although the contract of sale itself was fully executed but did not consummate in a title closing.
The taking of testimony was preceded by counsel for the contending parties entering into the following stipulation of facts: 1. Plaintiff was a broker duly licensed. 2. Pláintiff was the procuring cause of bringing about the contract of - sale. 3. On November 14, 1960, a contract of sale was entered into between the defendant as seller and Rosen and Pirozzi as purchaser naming the plaintiff as broker. 4. In the event the plaintiff is entitled to recover it would be in the sum of $2,200. 5. After the contract was executed a lis pendens was filed on February 6, 1961, in connection with the first mortgage which the purchaser had agreed to assume. 6. The defendant had been notified of the title exceptions of Home Title on or about February 10, 1961, by letter of plaintiff’s attorney who was then the attorney for the would-be purchasers. 7. As of May 31, 1961, the lis pendens was still of record. 8. The contract of sale was cancelled by the seller and purchasers and general •releases were exchanged on or about June 12, 1961. 9. The
alleged brokerage agreement was delivered by the defendant to the plaintiff simultaneously with the delivery of the proposed contract of sale.
In Sibbald v. Bethlehem Iron Co. (83 N. Y. 378, 382, 383, decided Jan. 18, 1881) Mr. Justice Finch writing for a unanimous court coalesced in trenchantly transparent and pithy prose the basic general precepts which still pervade and indeed govern the law of this State pertaining to broker’s commissions. He said ( pp. 382-383):
“ [T]he fundamental and correct doctrine is, that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue. (McGavock v. Woodlief, 20 How. [U. S.] 221; Barnes v. Roberts, 5 Bosw. 73; Holly v. Gosling, 3 E. D. Smith, 262; Jacobs v. Kolff, 2 Hilt. 133; Kock v. Emmerling, 22 How. [U. S.] 72; Corning v. Calvert, 2 Hilt. 56; Trundey v. N. T. & Hartf. Steamboat Co. 6 Robt. 312; Van Lien v. Burns, 1 Hilt. 134.)
“ [F] allure * * * and its consequences were the risk of the broker only. This, however, must be taken with one important and necessary limitation. If the efforts of the broker are rendered a failure by the fault of the employer', if capriciously he changes his mind after the purchaser, ready and willing and consenting to the prescribed terms, is produced; or if the latter declines to complete the contract because of some *405 defect of title in the ownership of the seller, some unremoved, incumbrance, some defect which is the fault of the latter, then l;the broker does not lose his commissions. And that upon the familiar principle that no one can avail himself of the nonperformance of a condition precedent, who has himself occasioned its non-performance. But this limitation is not even an exception to the general rule aifecting the broker’s right, for it goes on the ground that the broker has done his duty, that he has brought buyer and seller to an agreement, but that Hhe contract is not consumated and fails through the after-fault of the seller. The cases are uniform in this respect” (p. 384; italics supplied).
The record of the present trial discloses that the executed contract of sale herein undoubtedly failed to consummate because of the inability of the defendant to remove the lis pendens which had been filed February 6, 1961, emanating from the Wackenhut mortgage. (Said lis pendens was filed approximately three months after the contract of sale herein had been executed.) That the lien of the Wackenhut mortgage was known to the defendant and indeed to all of the interested parties herein at the time the contract of sale was entered into is clearly established by its inclusion in the contract of sale itself as the first mortgage in the sum of $5,000, which the purchaser had agreed to assume.
Therefore, although at first blush it would appear that the foregoing must of necessity place this case squarely within the orbit of consideration contemplated by the decision in Sibbald v. Bethlehem Iron Go. the “ totality of the facts ” herein lend themselves, in my view, to a diverse conclusion. In life as well as before the law, great principles curtsy before new circumstances.
Page 1 of the rider to the contract of sale established the conditional nature thereof. Namely, the purchaser was given the option of canceling said contract “on or before January 12, 1961,” in the following language, “ In the event the results of the borings shall prove that the property is not suitable for the construction of two-family residences without piling, the purchaser shall have the option of cancelling this contract by mailing a written notice of their intent to cancel together .with a copy of the boring tests and the opinion of the engineer making said test. ”
It is my considered opinion that the distillation of this controversy (irrespective of what caused the contract of sale to founder of fulfillment) lies in the conditional nature of the contract itself. That, indeed, there would have been no con *406 tract at all, unless the plaintiff had qualified his rights to a commission in the manner set forth in the proposed brokerage agreement marked in evidence as defendant’s Exhibit A.
It challenges belief to the point of incredulity to accept the premise, as stated with cogent clarity by the learned Justice Walter R. Hart of the Appellate Term (Burkard v. Midvale Estates, 41 Misc 2d 504, 509), that the defendant “would * * * have exposed itself unconditionally to liability for brokerage commissions with respect to a contract which afforded the vendees’ options to cancel the agreement, unless defendant qualified plaintiff’s rights to the commission. It is also fair to assume that plaintiff, from the documents in his hands, was aware of this fact and that the first thing he would look to in the contract of sale was a reference to the provision stating who the broker was and the provision for compensation. By remaining silent and delivering the contract of sale to the vendees for signature, he is deemed to have acquiesced in the terms of the brokerage agreement and should now be deemed estopped from asserting the contrary.” (One must not overlook the fact that the contract of sale itself clearly names the plaintiff as the broker who brought it about and specifically provides that his commission will be paid “ pursuant to a separate agreement.”)
Mr. Justice Hart continues (p. 509): “As stated in White v. La Due & Fitch (303 N. Y, 122, 128): ‘ the principle of estoppel ‘ ‘ prohibits a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice.” (Rothschild v. Title Guar. & Trust Co., 204 N. Y. 458, 464; see, also, Selzer v. Baker, 295 N. Y. 145, 149.) ’”
The studied silence of the plaintiff with regard to the unexecuted brokerage agreement with its customary “if as and when ’ ’ clause, of his indifference to his brokerage until after ■the contract has been vitiated by the consent of seller and purchaser, must needs result- in an invocation of the doctrine of estoppel, when it is ever borne in mind that the brokerage agreement was delivered to the plaintiff contemporameously with the delivery of the contract of sale and was specifically referred to therein. In addition the plaintiff has failed to establish by a fair preponderance of the credible evidence that title did not close due to a willful default upon the part of the defendant. Indeed, I am persuaded that the defendant’s efforts to remove the lien of the lis pendens were as reasonable and plausible as one might have cause to expect in like circumstance.
*407 Whatever general visceral disinclination one may have towards placing the imprimatur of approval upon the payment of a brokerage commission in circumstances such as this, unless the willful default of the broker’s principal was established beyond reasonable cavil, the fact remains inescapable that such approval might have been forthcoming were not the unexecuted brokerage agreement so deeply integral a part of the entire contractual complex. The one was an inherent concomitant of the other and in consequence thereof Sibbald v. Bethlehem Iron Go. (supra) is not apposite. Accordingly, judgment is hereby rendered in behalf of the defendant.