**NATIONAL–BEN FRANKLIN INSURANCE COMPANY OF PITTSBURGH, a corporation, Plaintiff in Error,**

**v.**

**Nettie McSWAIN, Defendant in Error.**

**No. 40309.**

Supreme Court of Oklahoma.

Dec. 17, 1963.

Rehearing Denied Jan. 21, 1964.

Clausen, Hirsh, Miller & Gorman, Chicago, Ill., John F. Eberle, Oklahoma City, for plaintiff in error.

Cargill, Cargill & Chiaf and Robert L. Cox, James R. Eagleton, Oklahoma City, for defendant in error.

HALLEY, Vice Chief Justice.

Parties will be referred to as in the trial court.

Nettie McSwain owned a concrete block house situated on two twenty-five foot lots in the Town of Ravia, Oklahoma. She carried insurance on this house with the defendant which insured her against damage to the house by wind.

Plaintiff contends that on April 17, 1957, there was a wind storm at Ravia that damaged this house of hers. She went to Mr. W. A. Mason, who was defendant's agent, and from whom she had purchased the policy of insurance involved herein and reported the damage to her house. He later came to the house and investigated the alleged wind damage. Then later, the exact date not having been fixed definitely, a Mr. Neighbors, an insurance adjustor from Ada, along with Mr. Mason, visited the premises. This was not after August, 1957. Mr. Neighbors told plaintiff that the damage to the house was not due to wind but to the settling of the house. Mr. Mason testified that he told plaintiff that the damage to the house was not from wind but from settling.

Plaintiff testified that defendant's agent, Mason, told her that damage to the house could be repaired for about $140 but that he would have an adjustor come out and check the damage. As heretofore mentioned the adjustor did look at the house. At no time did he ever say that wind caused the damage or that the defendant would make any repairs. However, the fact remains that the plaintiff testified that defendant's agent indicated to her that the defendant would make repairs after the adjustor checked the property. The plaintiff left for California shortly after Mr. Mason, the defendant's agent and Mr. Neighbors, together with the plaintiff, viewed the premises. She returned to Oklahoma in February, 1958, and checked the property and discovered that no repairs had been made upon the house. She says she immediately got in touch with Mr. Mason, the defendant's agent, and inquired what was going to be done about her claim. She says that she was told by Mr. Mason that she would have to see Mr. Neighbors;

that she attempted to get in touch with Mr. Neighbors and was never able to do so. She left again for California and returned to Oklahoma in February, 1959, and again there were no repairs made to the house so she again saw Mr. Mason, who told her that he had nothing to do with the matter, that she should see Mr. Neighbors. After this she obtained counsel and filed this action on February 25, 1959.

The case went to trial before a jury and a verdict rendered for plaintiff for $1,700. Judgment was duly entered on the verdict. From the overruling of defendant's motion for new trial appeal to this Court has been perfected by defendant.

Defendant has raised six propositions which it asserts are sufficient to reverse this case.

Proposition One is as follows:

"Plaintiff failed to prove, by a preponderance of legal and competent evidence, facts sufficient to sustain the judgment herein."

Proposition Two is:

"Plaintiff failed to prove by a preponderance of the evidence facts sufficient to prove an excuse for her failure to file her case within the one-year limitation."

Propositions Three, Four, Five and Six set up errors in giving Instructions Nos. 10, 6, 7 and 9, respectively.

We will take these contentions up in their order.

■ As to Proposition One defendant says that plaintiff failed to prove complete loss of property as claimed in plaintiff's petition. It is quite true that plaintiff at trial did offer evidence both as to complete loss of property and also as to amount necessary to repair the property. Under circumstances of this kind we have held that the pleadings would be considered amended to conform to the proof. Town of Braggs v. Slape, 207 Okl. 420, 250 P.2d 214; Atchison T. & S. F. Ry. Co. v. Bishop, 201 Okl. 471, 207 P.2d 282.

■ There is no question but that plaintiff's evidence showed damage by wind on April 17, 1957, and the extent thereof and what it would take to make the repairs. A demurrer to the evidence and motion for directed verdict would have to be overruled on this point.

■ As to defendant's Proposition Two, the question is whether defendant waived the requirement in the policy that suit must be brought on the policy within twelve months from the date the damage was done to the building by windstorm. Plaintiff's testimony is clear that when she left for California in the Summer of 1957, she was made to believe by Mr. Mason, the defendant's agent, that repairs would be made upon the house in question. We set out plaintiff's testimony on this question:

"Q. And how long was this after the storm?

"A. At the weekend.

"Q. What was said between you and Mr. Mason at that time?

"A. Well, he told me he would have to get the adjuster, he didn't know anything about it and he had contacted him and he was busy and we would have to wait until he could come out and contact us.

"Q. Did you go back home then?

"A. I went back home.

"Q. How long did you wait until you next saw Mr. Mason or anybody else?

"A. It was about three weeks or a month, just before I left to go to California and at that time he told me that he would get an adjuster out there and that he would write to me and I said I don't have time. I have to go to work.

"Q. And what month was this you are talking about?

"A. It was in June.

"Q. That you had this conversation?

"A. Yes, and he called Mr. Neighbors.

"Q. State what was said in your presence to you.

"A. He told me that he thought that the house could be fixed up for $140.00.

"Q. And what did you say? What else was said?

"A. And he said it wasn't done from the storm and I said it wouldn't have happened like that just overnight so it must have happened from the storm, that the storm did that.

"Q. All right, go ahead.

"A. And he said, well he said, we will fix it, and I said that will be the happiest time in my life if you do that, fix it just like it was before the storm hit. And I said if you can fix it back in as good condition as before the storm that is all I ask, I will be satisfied.

"Q. And what did they say?

"A. They told me they would go ahead and fix it and Mr. Mason said he would come down and check it to see that it was in livable condition like it was before the storm and he told me when I came home it would be all fixed and I went to my work the next day."

We believe that under our holding in Prudential Fire Insurance Co. v. Trave-Taylor Co., 194 Okl. 394, 152 P.2d 273, this was sufficient evidence to justify the trial court in overruling the demurrer to the evidence.

As to plaintiff's Proposition Three we think it is answered in our discussion of proposition One. There was evidence that the house would not take repairs yet the evidence was clear that repairs could be made and the value thereof. Instruction No. 10 is simply an instruction on the measure of damages to a house that can be repaired. No motion to require plaintiff to elect was made by defendant as to whether the recovery was to be for complete loss or the value of repairs. In the light of the evidence we will not say that the verdict is excessive.

Defendant's Proposition Four attacks Instruction No. 6, which is:

"While it is settled that a provision in standard form fire insurance policy such as the one involved is valid and may be pleaded by the insurer in an action brought on the policy where there are no extrinsic facts involved which would have the effect of suspending the limitation provision, it is equally well settled that the provision is one for the benefit of the insurer, and therefore one which can be waived.",

and Proposition Five attacks Instruction No. 7, which is:

"That the court erred in giving Instruction No. 7."

We cannot agree that either instruction was erroneous. No. 6 possibly could have been simplified but it states the law. No requested instruction was asked on this point. Instruction No. 7 follows our cases on these matters. Whether there was a waiver here was a jury question fairly submitted to the jury. We think that Prudential Fire Insurance Co. v. Trave-Taylor Co., supra, authorizes both Instruction No. 6 and Instruction No. 7.

Defendant's Proposition Six attacks Instruction No. 9, which is:

"The alleged damage to the house in question allegedly occurred April 17, 1957, and this action was commenced February 25, 1959.

"Now the burden of proof is upon the plaintiff to establish from a preponderance of the evidence, under the law set forth in these instructions, that the defendant, through its agents, by statements, acts and conduct waived the twelve month provisions for bringing suit on the policy, and that the plaintiff brought this suit, after the expiration of said twelve month period, and within a reasonable time after the

plaintiff knew, or should have known, that the defendant had repudiated any liability on said policy, then and in that event your verdict shall be for the plaintiff.

"But should you not so find, or should you find that the defendant did not waive the said twelve months provision, or, that the defendant repudiated any liability on said policy, after the expiration of said twelve months period, and that plaintiff failed to commence this action within a reasonable time after she knew or should have known of such repudiation, if any, then in either of said latter events your verdict shall be for the defendant."

Standing alone this instruction is erroneous because it tells the jury that if it determines the defendant had waived the time for filing the action on the policy that verdict should be for plaintiff but when the instructions are considered as a whole and especially Instruction No. 10 and a part of Instruction No. 11, which are as follows:

Instruction No. 10

"The measure of damages for damage to a house, that can be repaired, is the usual, ordinary and reasonable costs of the material and labor reasonably necessary for making repairs, at the prevailing, usual and reasonable charges for such kind and character of labor and material then generally prevailing at the time in the locality of the location of the property.",

Instruction No. 11

"Should you find from a preponderance of the evidence under these instructions, in favor of the Plaintiff, then you may assess the amount of recovery for such damages, if any, which you find from a preponderance of the evidence were sustained by plaintiff's house as a direct and proximate result of the alleged windstorm, and which must not be oppressive or unconscionable, but which you find will fairly and reasonably compensate plain-

tiff in so far as the same may be computed in money. * * *",

the jury surely knew that it had to find that it was incumbent upon plaintiff to show that the damage to the house must come from the windstorm and the extent of the damage. We can see no error in these instructions when they are taken as a whole as the jury was instructed in Instruction 12, when these words were used:

"You must consider these instructions as a whole and not a part to the exclusion of the rest."

See City of Tulsa v. Lewis, 189 Okl. 470, 117 P.2d 784.

The judgment of the trial court is affirmed.