HARTFORD ACCIDENT & INDEMNITY
COMPANY, a corporation, Plaintiff
in Error,

v.

Roy R. LUPER, Trustee of Wells Butane,
Inc., and All Its Stockholders and Members, Defendants in Error.

No. 40850.

Supreme Court of Oklahoma.

Oct. 4, 1966.

Rehearing Denied Nov. 29, 1966.

Second Rehearing Denied Jan. 3, 1967.

Wm. G. Smith, Fenton, Fenton, Smith & McCaleb, Oklahoma City, for plaintiff in error.

C. O. Hunt, Midwest City, Sam J. Goodwin, Pauls Valley, for defendants in error.

PER CURIAM:

Roy R. Luper, plaintiff, commenced this action against the Hartford Accident & Indemnity Company, a corporation, defendant, to recover upon $2,500.00 indemnity bond. A jury was waived and the case tried to the court resulting in a judgment for plaintiff for the full amount of the bond. At the trial, plaintiff was allowed to amend the caption of the petition to show the plaintiff as Roy R. Luper, Trustee of Wells Butane Company, Inc., and All Its Stockholders and Members. The parties will be referred to as they appeared in the trial court as plaintiff and defendant.

In January, 1958, Roy R. Luper and L. V. Wells, Jr., entered into an agreement for the operation of a butane and propane retail business in Sulphur, Oklahoma. This business was subsequently incorporated in 1958 under the name of Wells Butane Company, Inc. Roy R. Luper furnished the money to purchase all equipment used to carry on the business. Sixty (60%) per cent of the stock was issued to Luper and forty (40%) per cent of the stock was issued to Wells, who in turn executed a note to Roy R. Luper, secured by his stock in the company. Under terms of this agreement Luper was to be repaid the capital which he advanced from the earnings of the company. When he had been fully reimbursed, forty (40%) per cent of the stock in the company was to vest in Wells, free of all indebtedness. The corporation failed to pay its corporate taxes which resulted in the suspension of its license to do business in 1960, and cancellation in 1961.

Wells was the only person who operated the butane truck, collected, or charged for the butane gas delivered to customers. It was his duty to deliver both the money collected and all charge tickets to Luper. It was Luper's duty to pay the wholesalers for the butane gas purchased, Wells' salary, and all the operating expense.

The proceeds from sales which were turned over to Luper were insufficient to pay the expenses mentioned. Becoming suspicious of Wells' operation of the business, Luper secured an indemnity bond from defendant's local agent. So far as pertinent here this bond, dated October 16, 1958, but effective September 30, 1958, agreed to indemnify the insured, Wells Butane Company, Inc., for loss of money or property sustained or discovered, through fraudulent or dishonest acts committed by the employee covered. Other provisions limited liability to losses sustained through acts committed by any employee while the bond was in force, or if discovered prior to expiration of one year from the time the bond ceased to be in effect.

In January, 1959, Luper discussed the difficulty he was having with Wells with Mr. Horseman, local agent for Hartford Accident & Indemnity Company, and on February 6, 1959, the local agent requested Hartford to forward proof of claim forms. When the forms were received, Luper was contacted by the local agent. At the time Luper picked up the forms, he again discussed with defendant's local agent his dissatisfaction with Wells, and stated, "he wanted to have an audit made before he just outright accused the man of taking money from the corporation."

Thereafter Wells took possession of all the equipment of the corporation, including the accounts receivable, and refused to deliver anything to Luper. On January 29, 1959, Luper instituted an action against L. V. Wells, Jr., Case No. 6390, in the District Court of Murray County, Oklahoma, for possession of the goods, chattels and equipment unlawfully retained by Wells. On February 16, 1959, he amended his petition to allege, "the defendant, L. V. Wells, Jr., has taken complete control and possession of the butane truck, books, records and accounts, and has converted the same to his own use and benefit." On March 3, 1959, the District Court of Murray County, Oklahoma, ordered Wells to deliver to Luper all books, accounts, records, equipment, money in the bank, accounts receivable, and all materials pertaining to the Wells Butane Company, Inc. On March 6, 1959, Luper filed a second amended petition which alleged, "defendant has continued to collect the accounts receivable and continued to write checks on the First National Bank of Sulphur, Oklahoma." On March 10, 1959, H. R. Gale, a certified public accountant and bookkeeper for the corporation, was appointed Receiver of this company.

Mr. Gale testified that, based upon his audit of the books from February 20, 1958, to April 20, 1959, the accounts receivable amounted to $4,361.98; after completing verification of the accounts receivable, by correspondence and personal contacts with the people owing accounts, he was able to verify $1,796.77, leaving a shortage of $2,525.65. Gale was unable to testify as to the exact date the audit was completed. However, he stated that he was able to testify in the court hearing, with reference to the replevin of the company's equipment, that there was a shortage.

Soon after the books were returned to Luper through the above court action he employed a certified public accountant (Fox) to audit the company books.

The defendant advances three propositions which it asserts are sufficient to reverse this case. We have rearranged these propositions for consideration in the following order:

Proposition I, reads as follows:

"The action was not brought by the insured under the bond."

Proposition II, reads as follows:

"The corporation failed to file the proof of loss or commence this action

within the time required by the contract or operation of law."

Proposition III, reads as follows:

"The competent evidence wholly failed to show fraudulent or dishonest acts of the employee."

As to Proposition I, defendant contends that this action originally was brought by Luper, individually, whereas the bond sued upon was executed to "Wells Butane Company, Inc."; and that at the commencement of the trial the court erroneously allowed the plaintiff to amend his petition by adding to the caption of the petition the words, "Trustee of Wells Butane Company, Inc., and All Its Stockholders and Members."

Our statute, 12 O.S.1961, § 317, provides:

"The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or correcting a mistake in the name of a party, * * * or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; * * *."

■ Defendant does not contend amendment of the caption substantially changed the claim or defense, but urges such amendment was insufficient to bring in the real party in interest, more than two and one-half years after the running of statute of limitations. We are of the opinion under circumstances shown amendment to the caption of the petition was proper. In Saint Paul Fire & Marine Ins. Co. v. Spann, Okl., 355 P.2d 567, the syllabus states:

"Where a corporation has a legal or beneficial interest in a cause of action and is capable of bringing an action in its own name, but through mistake or inadvertence, brings it in the name of an individual, under Title 12 O.S.1951 § 317, an amendment substituting the real party in interest as plaintiff is permissible where the cause of action remains the same and defendants are deprived of no defense, and such amendment relates back to the commencement of the action and the fact that the time within which an original action could have been filed by the proper party has been barred by limitations furnishes no ground for refusing the amendment."

This contention is without substantial merit.

As to Proposition II, defendant directs attention to the following provisions of the defendant's bond:

"LOSS-NOTICE Section 10. Upon knowledge or discovery of
PROOF-LEGAL loss under this Bond, the Insured shall:
PROCEEDINGS (a) give notice thereof as soon as practicable to the Underwriter or any of its authorized agents, and (b) file detailed proof of loss, duly sworn to, with the Underwriter within four months after the discovery of loss.

 * * * * * * * * * * *

"No action shall lie against the Underwriter unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Bond, * * * nor at all unless commenced within two years from the date when the Insured discovers the loss. * * *"

———◆———

Defendant contends plaintiff either discovered the loss in January, 1959, when the replevin action was filed in the District Court of Murray County, Oklahoma, or at the latest in March, 1959, when the corporation's bookkeeper (Gale), testified in the replevin action. Thus defendant asserts the quoted provisions of the bond were not complied with, since the plaintiff's claim was not filed with the defend-

ant until November 17, 1959, and suit was not filed until April 20, 1961.

Plaintiff contends that proof of claim could not be completed and filed with the defendant until the independent auditor, employed by plaintiff, completed his audit in the early part of November, 1959; that prior to that time, plaintiff's claim would have been based upon suspicion.

 Under such circumstances, we have held that proof of loss must be made to the surety on an indemnity bond as provided by the terms of the bond, unless the surety waives the requirement by its action or conduct. Aetna Ins. Co. v. Jackson et al., 177 Okl. 345, 60 P.2d 210; Maryland Casualty Co. v. Tucker, 186 Okl. 16, 96 P.2d 80.

In this case, the evidence shows that one of the plaintiff's attorneys contacted the defendant's claim manager on several occasions concerning plaintiff's claim. On October 14, 1960, defendant's claim manager wrote the Insurance Commissioner of Oklahoma a letter, with a copy to plaintiff's attorney, in which he stated:

"* * * It probably is apparent to you that so long as Mr. L. V. Wells, Jr. maintains that he is innocent of the alleged dishonesty then we are in no position to entertain payment of this matter. * * *"

On December 28, 1960, the defendant's claim manager wrote the plaintiff's attorney a letter in which he stated:

"* * * The principal, L. V. Wells, Jr., maintains that he is innocent of the charged dishonesty and because of this we are not at liberty to voluntarily make payment of this claim."

Plaintiff's attorney testified he attempted to comply with defendant's request to obtain an admission from Wells that he took the money. His testimony is as follows:

"Then I got in touch with Mr. Don C. Maness in Ada, who was Claims Manager for Hartford Insurance Company group. Mr. Maness and I had had some claims before and they were settled amicably, and he informed me if I would

get him the proof that there was a shortage and that Mr. Wells had misappropriated the funds that he felt we could get the matter settled. After several exchanges of letters, he informed me that Mr. Wells had been contacted and Mr. Wells had denied embezzling any of the funds. He asked me if I could get him some definite proof or positive proof that Mr. Wells had embezzled the funds, * * * *"

* * * * * *

"Then I got certified copies from Mr. McIver, the Court Reporter of Judge Monroe, who was the then District Judge, part of his district was Murray County, wherein Mr. Wells admitted that he had embezzled or spent, I'll put it that way, not embezzled—I'll say spent."

The contention that a proof of loss was not forwarded to the defendant within the time provided by the bond was not raised until the defendant filed its answer. At no time did the defendant deny liability to the plaintiff but insisted it could not pay the claim until Wells admitted he took the money. The acts of the defendant's claim manager were sufficient to lead the insured to believe that compliance with the technical provisions of the policy were not being insisted upon by the defendant, and the filing of a proof of loss would not satisfy the condition imposed by the defendant.

The bond written by the defendant insures, "against any loss of money or other property which the insured shall sustain * * * through any fraudulent or dishonest act or acts committed by any person named in the schedule * * *." To insist that plaintiff secure an admission of dishonesty from the accused is unreasonable, and beyond the terms of the bond. From defendant's demands it is obvious, regardless of when the proof of loss was filed, that plaintiff could not have satisfied the condition imposed by the defendant's claim manager. If defendant intended to rely on the failure to file proof of loss within four months as required by the bond,

it should have denied liability in November, 1959, when it received plaintiff's proof of loss. Had liability been denied at that time, then the defendant could expect to rely upon the technical limitations of the bond as a defense.

We hold defendant's conduct was sufficient to constitute a waiver of the limitations set forth in the bond as to filing proof of loss and instituting an action to recover upon the bond. In Scott v. Oklahoma Farm Bureau Mutual Ins. Co., Okl., 387 P.2d 487, 489, we quoted with approval from Hartford Fire Ins. Co. v. Smith, 141 Okl. 90, 284 P. 624, which stated:

"While slight evidence is sufficient to show waiver of policy provision regarding time of making proof of loss, the acts constituting such waiver should be such as are reasonably calculated to make insured believe that compliance therewith was not desired, and that it would be of no effect, if requirements were observed by him."

* * * * * *

" 'Waiver, though involving the intentional relinquishment of a known right, is a question of fact which may be established by direct evidence or by inference from all the surrounding circumstances.' "

See also Agricultural Ins. Co. of Watertown, N. Y. v. Iglehart, Okl., 386 P.2d 145; Oklahoma Farm Bureau Mutual Ins. Co. v. Lay, Okl., 398 P.2d 506; National-Ben Franklin Ins. Co. v. McSwain, Okl., 388 P.2d 501; Maryland Casualty Co. v. Tucker, 186 Okl. 16, 96 P.2d 80.

The question of waiver of limitations in the bond was not specifically raised by the plaintiff's pleadings. In similar cases, we have held that where there was no objection to testimony on the ground of failure to plead waiver we will treat pleadings as amended where defect has been fully supplied by proof. Scott v. Oklahoma Farm Bureau Mutual Ins. Co., Okl., 387 P.2d 487; Century Ins. Co., Ltd. of Edinburg, Scotland v. Rice, 193 Okl. 418, 144 P.2d 953; Continental Ins. Co. of N. Y. v. Portwood, 184 Okl. 22, 84 P.2d 435.

Under Proposition III, defendant contends there is no competent evidence to show fraudulent or dishonest acts by Wells, and that the evidence presented by the certified public accountants was based on hearsay and inadmissible.

The evidence is undisputed that Wells had exclusive control of the equipment, made all the contacts with customers, collected and made charge tickets for gas sold, and collected the accounts. Nothing in this record suggests that anyone except Wells could have been responsible for the shortage in the accounts receivable. The audit of the certified public accountant (Gale) reflected a shortage of $2,565.21 covering the period from February 20, 1959, to April 20, 1959. The audit of the other accountant (Fox) disclosed a shortage of $2,902.06 for the same period of time. Each accountant testified that he did not verify all accounts receivable, but discontinued verification and audit after the shortage exceeded $2,500.00, the amount of the bond. The uncontradicted testimony of the accountants showed that each used accepted accounting procedures in determining the amount of the loss. We are of the opinion the trial court properly allowed the accountants to summarize the results of their examination of the multifarious and voluminous books of account. Hartford Accident & Ind. Co. v. Collins-Dietz-Morris Co., 10 Cir., 80 F.2d 441; Suttle v. Chadwell, 196 Okl. 298, 164 P.2d 880.

From review of the entire record we find that plaintiff did not attempt to establish the amount of loss incurred subsequent to September 30, 1958, the effective date of the bond. Each accountant testified he did not have available at the trial evidence showing the amount of the loss incurred subsequent to that date. Defendant's liability can extend only to loss incurred during the term of the bond. The evidence was insufficient to establish the

amount of loss incurred while the bond was in force.

In Holbrook v. Moore, 177 Okl. 173, 58 P.2d 865, syllabus 3 states:

"When error exists as to one or more issues only, and the judgment in other respects is free from error, and the error can clearly be seen not to have affected those issues in which there was no error, this court in its discretion may limit the new trial to those issues affected by the error."

The judgment is affirmed upon the issue of defendant's liability under the bond. The judgment otherwise is reversed and the cause remanded for new trial to establish the amount of plaintiff's loss after September 30, 1958, in no event to exceed $2,500.-00, the face amount of the bond.

This Court acknowledges the services of WAYNE H. LEWIS, AUSTIN R. DEATON and CALVERT L. CANNON, who were recommended by the Oklahoma Bar Association and appointed by this Court as Special Masters. A preliminary advisory opinion was prepared by Mr. LEWIS and the Chief Justice then assigned the case to BERRY, J., for study and review, after which and upon consideration by the Court, the foregoing opinion was adopted.