Jerry A. BEECK and Judy A. Beeck, Appellees,

v.

AQUASLIDE 'N' DIVE CORPORATION, Appellant,

v.

EMPLOYERS MUTUAL CASUALTY COMPANY, Illinois-Iowa Claim Service Inc., and Vincent E. O'Toole, Appellees.

No. 2-68891.

Supreme Court of Iowa.

May 16, 1984.

Rehearing Denied June 8, 1984.

E. Eugene Davis and David J. Grace of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for appellant.

John A. McClintock and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellees Beeck.

A. Roger Witke and John D. Cleavenger of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellee Employers Mutual.

William M. Tucker and Richard M. Tucker of Phelan, Tucker, Boyle & Mullen, Iowa City, for appellees Illinois-Iowa and O'Toole.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and CARTER, JJ.

UHLENHOPP, Justice.

The issues in this appeal stem from a representation by defendant Aquaslide 'n' Dive Corporation that it manufactured a water slide on which plaintiff Jerry A. Beeck was seriously injured. The representation turned out to be false—Aquaslide did not manufacture the slide. As a result, Beeck and his former wife Judy Beeck Bruinsma claim they lost valid causes of action against the actual manufacturer because the time to sue that entity had expired under the applicable statute of limitations by the time they learned the truth.

Beeck's injury occurred on July 15, 1972, while he was attending a social event sponsored by his employer at Kimberly Village in Davenport, Iowa. He fractured his neck when he went down a slide into a swimming pool. He has since been a quadriplegic.

The Beecks filed an action in federal court alleging that Aquaslide designed and manufactured the slide involved in the occurrence. After investigation by insurance companies, Aquaslide stated in its answer to the Beecks' complaint and again in answers to interrogatories filed on June 4, 1974, that it manufactured the slide. The time for a suit would expire on a personal injury claim on July 15, 1974. Iowa Code § 614.1(2) (1973). In February 1975, Aquaslide president Carl R. Meyer discovered that the slide had not been manufactured by Aquaslide.

Aquaslide requested and was granted permission to amend its answer in the federal court action to deny manufacture of the slide. *Beeck v. Aquaslide 'n' Dive Corp.*, 67 F.R.D. 411 (S.D.Iowa 1975), *aff'd*, 562 F.2d 537 (8th Cir.1977). A separate trial was held on the issue of the identity of the manufacturer, and a jury found that Aquaslide did not manufacture the slide. The federal court then dismissed the action against Aquaslide on motion for summary judgment.

While an appeal of that action was pending in the federal court of appeals, the Beecks brought the present action in the Iowa district court against several parties, including Aquaslide, alleging theories of fraud and misrepresentation based on Aquaslide's assertion that it had manufactured the slide. They bottomed this action on the theory that they would have recovered their damages from the true manufacturer if they had sued it in time, and that Aquaslide's misrepresentation prevented such a suit. Each of the defendants in this action moved for summary judgment, which the Iowa district court granted. The Beecks then appealed to this court. We affirmed the summary judgment except as to Aquaslide, which we kept in the case. We concluded that the Beecks had "at least generated an issue of fact on whether Meyer on behalf of Aquaslide recklessly misrepresented to them that the slide was an Aquaslide." *Beeck v. Kapalis*, 302 N.W.2d 90, 96 (Iowa 1981).

On remand of the Iowa court action, the case was tried on the merits to the court. The court found for the Beecks and entered judgment in the sum of $3,116,317.87 for Jerry and $65,000 for Judy, plus interest and costs. The court also dismissed a cross-claim by Aquaslide for contribution. Aquaslide appealed to this court, raising several issues, and the Beecks cross-appealed.

■ I. *Scope of review.* On review we determine the sufficiency of the evidence introduced in the light most favorable to the court's findings, whether or not the evidence was contradicted. The trial court's findings of fact are binding if supported by substantial evidence. A finding of fact is supported by substantial evidence if the finding may reasonably be inferred from the evidence. *Grefe v. Ross*, 231 N.W.2d 863, 865 (Iowa 1975).

■ Some of the questions in the present appeal were decided in our previous opinion. The law of the case requires that we not reopen issues that have been decided, unless evidence subsequently introduced is substantially different. *United States v. Unger*, 700 F.2d 445, 450 (8th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983).

We turn to the issues which the parties present.

II. *Liability for reckless misrepresentation.* In our previous opinion, we held that for summary judgment purposes the Beecks generated an issue against Aquaslide based on reckless misrepresentation as a form of fraud. *Beeck,* 302 N.W.2d at 96. In doing so we necessarily decided as a legal proposition that a party making reckless misrepresentations during litigation is not immune from civil liability for damages. *See id.* at 94 (citing *Slotkin v. Citizens Casualty Co.,* 614 F.2d 301 (2nd Cir. 1979), *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980)). That legal proposition is thus binding in the present appeal.

■ To establish their present cause of action, the Beecks had to prove each element of fraud by the applicable standard of proof: a preponderance of clear, satisfactory, and convincing evidence. *Grefe,* 231 N.W.2d at 864; *Hall v. Wright,* 261 Iowa 758, 767, 156 N.W.2d 661, 666 (1968). They had to prove the following elements of fraud: "(1) a material misrepresentation, (2) made knowingly (scienter), (3) with intent to induce the plaintiff to act or refrain from acting, (4) upon which the plaintiff justifiably relies, (5) with damages." *Beeck,* 302 N.W.2d at 94; *Hall,* 261 Iowa at 766, 156 N.W.2d at 666.

A. The elements of materiality and misrepresentation are not contested. Aquaslide's answers to the Beecks' complaint and interrogatories in the federal case were material representations that a federal jury found to be false.

■ B. Scienter and intent to deceive are closely related and "are shown not only when the speaker has actual knowledge of the falsity of his representations but also when he speaks in reckless disregard of whether his representations are true or false." *Grefe, supra,* 231 N.W.2d at 867; *Sedco International, S.A. v. Cory,* 522 F.Supp. 254, 324 (S.D.Iowa 1981), *aff'd,* 683 F.2d 1201 (8th Cir.), *cert. denied,* 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).

The requirement of scienter is met "when the evidence shows [the] representations were made in reckless disregard of their truth or falsity." *B & B Asphalt v. T.S. McShane Co.,* 242 N.W.2d 279, 284 (Iowa 1976). "A false statement innocently but mistakenly made will not establish intent to defraud, but, when recklessly asserted, it will imply an intent to defraud." *Grefe, supra,* 231 N.W.2d at 867 (citing *Hall,* 261 Iowa at 768–72, 156 N.W.2d at 667–69)); *see* W. Prosser, *Law of Torts* § 107, at 701 (4th ed. 1971).

■ The trial court found that the conduct of Meyer was sufficiently reckless to permit the implication of the elements of scienter and intent. The finding was based on the following evidence.

Meyer was a pioneer in the water slide business and his company accounted for nearly ninety percent of all water slide sales. In an apparent effort to make inroads into Meyer's dominance, competitors resorted to various tactics. Many closely copied Aquaslide products. One company, S.R. Smith & Company, hired Aquaslide's former mold-maker and began production of slides that were all but indistinquishable from Aquaslides. As a result, identification of a particular manufacturer's slide without specialized knowledge became difficult.

The identification problem was exacerbated by salesmen. They frequently used Aquaslide literature to demonstrate available slides but then sold another manufacturer's slide, or they purportedly sold Aquaslide equipment and then, unknown to the customer, delivered another manufacturer's slide. Meyer testified he was harassed continually by these tactics. As to this subject Meyer testified:

Q. Well, have you ever had anybody send any slides down to you that reportedly were sold as Aquaslides, and you checked them out, and they weren't.

A. They returned slides to us time and time again, packaged in our own cardboard, and we would pick them up under our warranty program, return them to Brownsville [Texas], open the

carton, and be an S.R. Smith in there, or be somebody else's slide, and it was not of our manufacture. We had labels marked on those so we knew who the dealers were that were doing this, and/or distributors. Then we will take the slide, and take it out of our carton, and then ship it back to them the next time they placed an order, and we would not honor any credit for warranty under this type of arrangement. Charged them the freight sometimes back, both ways for doing it.

The problem of misidentification became so acute that Meyer found himself being sued for injuries on water slides that he did not manufacture. This happened "periodically" and required Meyer to take steps "to convince [the litigants] through literature or writing that it wasn't our slide...." In order to safeguard against such unjustified lawsuits Meyer ordered that in each instance in which an Aquaslide was said to be involved, photographs from particular angles were to be taken and sent to him. From properly taken photographs, Meyer said he could identify one of his slides.

As to the accident involving Beeck, however, Meyer did not make use of his specialized knowledge. He did not order photographs of the slide and he did not explain to investigators the scope of the misidentification problem, nor did he provide them with the facts necessary to make a proper identification. He failed to do so despite his knowledge that a proper identification could be made if an investigator was apprised of certain facts. For example, the color of an Aquaslide was distinctive, Aquaslides were installed in a particular manner, the ladder steps on an Aquaslide were two and five-eighths inches wide rather than three inches, the design of the tip of an Aquaslide was peculiarly Aquaslide's, and the Aquaslide logo was imbedded on the underside of each of the slides. In this case Meyer also did not cross-check invoices provided by investigators that referred to an Aquaslide Queen "Q–3D" slide.

Instead of following his own procedures or taking reliable substitute steps, Meyer testified that he concluded the slide was an Aquaslide in the following manner:

The reports [from investigators] ... all indicated ... that with the brochure and the literature and everything that was given, the model number, the continual reference to a Queen straight slide, and even the pricing, all indicated to us that this was a Queen-sized slide, by investigators as well as the people that sold it, the distributor sheet, the dealer sheet and the sale to the ultimate person that sold it to Kimberly Village. Everything indicated right from the inception from Fireman's Fund that this was a model Q–3D.

Meyer was also asked if he investigated this slide personally. He said, "No." He was then asked: "Was there anybody in the country more able to identify your slides than you?" He replied: "I don't believe so."

From this evidence the trial court found that Meyer recklessly disregarded the question as to whether the slide on which Beeck was injured was or was not an Aquaslide. Meyer alone realized the scope and magnitude of the misidentification problem, he had access to information necessary for a proper identification, the investigators were not privy to this information, they could not properly identify a slide without his information, and he did not take steps to provide investigators with essential identification data. We hold that the trial court's finding of recklessness has substantial evidentiary support. We appreciate that Aquaslide's admissions in the federal action stating it manufactured the slide were against its own interest, but this does not eliminate the fact that Meyer knew of the misidentification problem, realized that the adjusters and attorneys were ignorant of the problem, but did not apprise them of the problem.

■ C. As to the element of reliance, Aquaslide also argues that the Beecks depended on their own investigation and not on Aquaslide's representations. On this question the trial court found:

The evidence is conclusive that the Beecks relied upon those [federal] pleadings. It was not until after the state Statute of Limitations had tolled that the Beecks discovered evidence to the contrary. It is quite realistic that a reasonable person would rely upon those written statements and pleadings. The plaintiffs had no burden, under those facts, of conducting further investigation to ascertain their truth or falsity. The Plaintiffs had a perfect right to and in fact did rely on said pleadings, realizing that Carl Meyer, with some special knowledge, was in a position to admit or deny being the manufacturer. Mr. Meyer must also shoulder the burden that the Plaintiffs would rely on his statements.

On this point the trial court drew reasonable inferences from the facts proved. *See Wroblewski v. Linn-Jones FS Services,* 195 N.W.2d 709, 712 (Iowa 1972) (circumstantial and direct evidence equally persuasive). The finding has evidentiary support.

■ D. The final element is damage. This element requires inquiry into whether (1) the statute of limitations barred the Beecks' cause of action against the true manufacturer, (2) the Beecks would have been successful in obtaining damages from the true manufacturer, and (3) the damages awarded by the trial court for the personal injuries have a legal foundation.

(1) Was action against the true manufacturer barred by lapse of time? In our previous opinion on the summary judgment we did not of course decide whether the Beecks in fact lost their legal remedy in 1975 against the true manufacturer. We wrote that the Beecks "generated an issue of whether their original claim is, in fact, barred by the statute of limitations .... Plaintiffs should be given an opportunity to present their evidence on this damage issue to a trier of fact." *Beeck v. Kapalis,* 302 N.W.2d at 94.

■ A party seeking to establish a statute of limitations bar has the burden of proving the bar. In order to carry its burden, a party must prove the facts constituting the bar. *Cuthbertson v. Harry C. Harter Post No. 839,* 245 Iowa 922, 928, 65 N.W.2d 83, 87 (1954); *In re Plumbs' Estate,* 256 Iowa 938, 944, 129 N.W.2d 630, 634 (1964). The Beecks introduced these facts: the accident occurred on July 15, 1972, and the discovery about the manufacturer was not made until February 1975. The Beecks presented no other evidence on this issue. The statute of limitations, of course, ran out on July 15, 1974.

■ Based on this showing, the trial court found that the Beecks lost their cause of action against the true manufacturer by passage of time. This showing was sufficient, subject to presentation of other evidence requiring a contrary conclusion. *See Public Finance Co. v. Van Blaricome,* 324 N.W.2d 716, 720 (Iowa 1982). Aquaslide undertook that task, claiming the Beecks could have equitably estopped the actual manufacturer from successfully asserting a statute of limitations defense.

■ Equitable estoppel is a recognized defense to the application of a time-bar statute. *DeWall v. Prentice,* 224 N.W.2d 428, 430 (Iowa 1974); *L & W Construction Co. v. Kinser,* 251 Iowa 56, 66, 99 N.W.2d 276, 282 (1959); *Conradi v. Boone,* 316 F.Supp. 918, 920 (S.D.Iowa 1970). In its opinion in the Beecks' litigation the federal district court considered the possibility of a fraud case against the true manufacturer and then stated:

[F]urther, as defendant points out, the doctrine of equitable estoppel might possibly preclude another defendant from asserting the two-year statute as a defense.

*Beeck v. Aquaslide 'n' Dive Corp.,* 67 F.R.D. at 415.

■ A party asserting an exception to the expiration of a limitations period has the burden of proving the exception. *Franzen v. Deere & Co.,* 334 N.W.2d 730, 732 (Iowa 1983); *Brown v. Ellison,* 304 N.W.2d 197, 200 (Iowa 1981). The exception must be proven by clear and convincing evidence. *DeWall,* 224 N.W.2d at 431

(citing *Holden v. Construction Machinery Co.*, 202 N.W.2d 348, 355–56 (Iowa 1972); *Holsteen v. Thompson*, 169 N.W.2d 554, 558 (Iowa 1969). Aquaslide argues it established its estoppel argument by producing the following evidence.

A swimming pool supply salesman showed literature of Aquaslide products to Kimberly Village representatives and obtained an order for a Queen "Q–3D" model slide. The order was placed with Sentry Pool & Chemical Company, which in turn ordered an Aquaslide Queen "Q–3D" from Purity Manufacturing Company. Sentry picked up the slide from Purity on May 19, 1971, and, without removing it from the truck or the original carton, delivered it to Kimberly Village where it was installed.

The federal jury found that Aquaslide *did not* manufacture the slide. Who *did* manufacture the slide was not determined, although substantial evidence on the subject was presented. From that evidence a trier of fact could conclude that the slide was in fact made by S.R. Smith & Company. Meyer testified he believed the slide was made by Smith. Renee DuPont, president of Smith, stated that it would take an expert, such as Meyer or himself, to identify the slide. He said he could not conclusively identify the slide without taking various measurements which he did not do. He did testify that his slide was nearly identical to an Aquaslide, as he copied Aquaslide's Queen "Q–3D" slide with only minor variations. DuPont also produced a Smith invoice that showed the sale to Purity in April of 1970 of a Smith slide that was a Queen "Q–3D" look-alike. No evidence was introduced showing the sale of any other such look-alike to Purity prior to sale of the slide to Kimberly Village.

Aquaslide contends on this evidence that the Beecks had a claim against at least Purity and Smith in 1975 which could not have been barred by the statute of limitations.

As to Purity, we find this contention meritless. The Beecks' misrepresentation theory is based on the contention that the identity of the actual manufacturer was concealed from them. But prior to the running of the statute of limitations the Beecks knew that Purity was in the chain of distribution. Purity's identity was not concealed; the statute of limitations was not tolled as to Purity. We thus conclude that the Beecks would not have been able to assert an equitable estoppel defense successfully against Purity if they had subsequently sued Purity for products liability. We need not speculate whether a cause of action such as the present one would have been available later against Purity based on a misrepresentation that it dealt only in Aquaslides.

As to Smith, the estoppel question is more involved. Aquaslide had the burden of producing evidence of the requisite clarity as to each element of equitable estoppel. Preliminarily Aquaslide had to establish that Smith manufactured the slide involved. Abundant evidence supported such a contention, and in the way the parties tried the case and the trial court decided it, the court necessarily found that Smith was the manufacturer. *Hubby v. State*, 331 N.W.2d 690, 695 (Iowa 1983). In addition, Aquaslide had to show (1) that Smith falsely represented or concealed its identity as the true manufacturer and that its identity was a material fact; (2) that the Beecks lacked knowledge of the identity of the actual manufacturer; (3) that Smith intended the Beecks to act without knowledge of its identity as manufacturer; and (4) that the Beecks relied upon this concealment to their prejudice. *See DeWall*, 224 N.W.2d at 430. The latter three elements have substantial evidentiary support but the first element, false representation or concealment, presents problems.

 An estoppel may be based on fraudulent concealment. *See Gruener v. City of Cedar Falls*, 189 N.W.2d 577, 580 (Iowa 1971) ('If a person is unaware of his cause of action because the wrongdoer fraudulently conceals it from him, the statute of limitations does not run against him until he learns of the wrong or of facts placing him on inquiry."). *See also Ryser v. Gatchel*, 151 Ind.App. 62, 278 N.E.2d 320

(1972); *State Farm Mutual Automobile Insurance Co. v. Budd,* 185 Neb. 343, 175 N.W.2d 621 (1970); 53 C.J.S. *Limitations of Actions* § 25, at 962–63 (1948).

We hold the trier of fact could find that Smith "deceived" in the present context if Purity substituted a Smith slide for an Aquaslide, if Smith knew of or recklessly disregarded the substitution, and if Smith did not reveal the substitution. A fact question existed on this issue. Aquaslide properly presented the question, the trial court did not resolve it, and the trial court will have to make findings on remand as to whether Smith would have been equitably estopped from raising the statute of limitations defense. We express no opinion as to how the trial court should decide this issue. We proceed to the remaining issues on the Beecks' misrepresentation claim against Aquaslide.

(2) The Beecks claim they would have obtained their damages from the true manufacturer if they had sued it in time. We have already held the court found on sufficient evidence that Smith manufactured the slide. Would the Beecks have succeeded in obtaining their damages from Smith? This question involves two issues, whether the Beecks would have secured judgment against Smith and whether they could collect the judgment or a reasonably ascertainable portion of it. Manifestly they would have had to sue Smith within the period of the statute of limitations or, if Smith was estopped to assert the statute of limitations, within a reasonable time after the estoppel ceased to be operational.

As to securing a judgment against Smith, the Beecks argue that Smith would have been strictly liable in tort. The trial court agreed. The elements of strict liability are set forth in *Osborn v. Massey-Ferguson, Inc.,* 290 N.W.2d 893, 901 (Iowa 1980), and *Hughes v. Magic Chef, Inc.,* 288 N.W.2d 542, 546 (Iowa 1980).

Of the several elements of a strict liability claim, the focus here is on two elements—whether the product was in a defective condition and whether that condition was unreasonably dangerous when the product was used in a reasonably foreseeable manner.

A manufacturer has a duty to give proper instructions where failure to do so would render a product defective and unreasonably dangerous. Restatement (Second) of Torts § 402A, Comment *j* (1965); 72 C.J.S. *Products Liability* § 29 (Supp.1975). The Beecks produced expert testimony that the slide was defective and unreasonably dangerous because instructions with it permitted installation where the water depth was only three feet. Experts testified that purchasers should have been instructed to install slides where the water depth was at least eight or nine feet rather than three. They calculated that a person descending a Queen slide or a look-alike entered the water with approximately the same force as a person coming off a one-meter diving board. Such force would carry a person quickly to a depth of nine feet. The hazard, the experts stated, lies in the fact that a person using a slide, particularly for the first time, as was Beeck, would be unaware of danger.

The slide on which Beeck was injured was installed where the depth of the water was four feet. Although the evidence was in conflict as to the manner in which Beeck used the slide, substantial evidence supports the court's finding that Beeck "traveled down the slide head first, on his stomach, with his arms extended forward above his head." Meyer testified that this was a foreseeable use of the slide. Experts calculated that the force with which Beeck entered the water was more than required to cause injuries such as those Beeck sustained on impact with the pool floor. The evidence was sufficient as to the two elements in question.

In seeming conflict with its estoppel issue, Aquaslide also contends on the issue of whether the Beecks would have obtained judgment against Smith that the true manufacturer was not identified. But substantial evidence supports the finding which we hold the trial court necessarily made that the slide was manufactured by S.R. Smith

& Company. It also shows that Smith's instructions permitted installation where the water depth was as little as three feet.

The issue of whether the Beecks would have been able to collect a judgment against Smith, however, poses a different question. Manifestly a judgment is not of value if it is uncollectible, and numerous uncollectible judgments are of record.

The Beecks made no attempt to present evidence that a judgment against Smith would have been collectible. They claim Iowa law does not require proof of collectibility, that such a showing would be impossible, and that in any event Aquaslide did not properly preserve the issue for review. The trial court agreed.

In our prior opinion we did not deal with the Iowa law on the issue of collectibility, or with a number of other issues which were litigated at the present trial. We dealt only with the questions which were presented at that time. We did state, however, that "cases in which a plaintiff claims a defendant caused him to lose an otherwise valid cause of action because of the running of statutes of limitation often involve claims against attorneys for malpractice. To hold an attorney liable, a plaintiff must prove that he would have been successful in the underlying suit and that his claim was lost through the attorney's negligence." *Beeck v. Kapalis*, 302 N.W.2d at 93–94.

In a legal malpractice context, and here, the general measure of damages is "the amount of loss actually sustained as a proximate result of the conduct of the attorney"—here, the manufacturer. 7A C.J.S. Attorney & Client § 273a (1980); *see* 7 Am.Jur.2d *Attorneys at Law* § 226 (1980). We have held that "[a]s the general measure is the loss 'actually sustained,' when the loss arises from negligently prosecuting a prior case the client has the burden of proving not only the amount of the judgment he would have obtained but for the negligence, but also what he would have *collected.*" *Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 526 (Iowa 1983). This is the rule which is ap-

plied generally. *Flora v. Lawton*, 187 Cal. App.2d 657, 10 Cal.Rptr. 98 (1960); *Campbell v. Magana*, 184 Cal.App.2d 751, 8 Cal. Rptr. 32 (1960); *Lawson v. Sigfrid*, 83 Colo. 116, 262 P. 1018 (1927); *McDow v. Dixon*, 138 Ga.App. 338, 339, 226 S.E.2d 145, 147 (1976); *Kohler v. Woollen, Brown & Hawkins*, 15 Ill.App.3d 455, 304 N.E.2d 677 (1973); *Piper v. Green*, 216 Ill.App. 590 (1920); *King v. Fourchy*, 47 La.Ann. 354, 16 So. 814 (1895); *Hoppe v. Ranzini*, 158 N.J.Super. 158, 385 A.2d 913 (1978); *Schmitt v. McMillan*, 175 App.Div. 799, 162 N.Y.S. 437 (1916); *Titsworth v. Mondo*, 95 Misc.2d 233, 407 N.Y.S.2d 793 (1978); *Gross v. Eannace*, 44 Misc.2d 797, 255 N.Y.S.2d 625 (1964); *Taylor Oil Co. v. Weisensee*, 334 N.W.2d 27 (S.D.1983); *Collier v. Pulliam*, 81 Tenn. 114 (1884); *Jackson v. Urban, Coolidge, Pennington & Scott*, 516 S.W.2d 948 (Tex.Civ.App.1974); *Staples' Exrs. v. Staples*, 85 Va. 76, 7 S.E. 199 (1888).

A similar principle has been applied outside the legal malpractice field. *See Sorrels v. Texas Bank & Trust Co.*, 597 F.2d 997 (5th Cir.1979); *Travelers Indemnity Co. v. Jacobs*, 402 So.2d 1261 (Fla.App. 1981), *petition denied*, 412 So.2d 471 (Fla. 1982); *Hammons v. Schrunk*, 209 Or. 127, 305 P.2d 405 (1956); *see also Olsen v. Spomer*, 192 Cal.App.2d 99, 103, 13 Cal. Rptr. 392, 394 (1961). We have previously cited the rule. *Baker v. Beal*, 225 N.W.2d 106, 113 (Iowa 1975).

The rationale for the rule is set forth as follows in Barry, *Legal Malpractice in Massachusetts*, 63 Mass.L.Rev. 15, 18–19 (1978):

Suppose the attorney negligently fails to bring suit on a claim against a tortfeasor who has neither personal assets nor liability insurance sufficient to satisfy the amount of the probable judgment. At the trial of the malpractice action, can the lawyer successfully contend that, regardless of the substantial amount of the probable verdict in the underlying suit, the measure of the client's damages is limited to the amount he would have actually recovered by way of a satisfied

judgment? The question should be answered affirmatively, since otherwise the client would be placed in a better position as a result of the lawyer's malpractice than he would have been in had the attorney not been negligent. Indeed a contrary rule might furnish an incentive for claimants to engage incompetent counsel with large malpractice insurance policies for the purpose of suing judgment-proof tortfeasors in order to obtain a larger recovery in the malpractice action than could have been recovered in the underlying suit.

See also, Bridgman, *Legal Malpractice—A Consideration of the Elements of a Strong Plaintiff's Case*, 30 S.C.L.Rev. 213, 236 (1979).

▆▆▆ As to the Beecks' argument of impossibility, we stated in *Pickens, Barnes & Abernathy*, 328 N.W.2d at 526:

If the solvency of the prior defendant [Smith, in this case] is known beyond question—for example, a tort claim against the state or an insurance claim within policy limits—a court may hold without other proof that the entire judgment would have been collectible. But if the prior defendant was an individual or other entity whose solvency is not known beyond question, the client [Beecks] must introduce substantial evidence from which a jury could reasonably find that a prior judgment would have been collectible in full, or could reasonably find the portion of the judgment which would have been collectible.

Smith falls within the class of an "other entity whose solvency is not known beyond question." We hold Iowa law required the Beecks to introduce substantial evidence from which the trier of fact could reasonably find that if the Beecks had obtained judgment against Smith, the judgment would be collectible in full or could reasonably find the portion that would be collectible.

For two reasons we cannot accept the Beecks' argument of the impossibility of proving collectibility. One is that the required showing of whether a judgment would or would not be collectible through assets or insurance is not usually impossible in fact, under modern discovery techniques. Iowa R.Civ.P. 122(*b* ), 131, 140(*a*), 147(*a*) and (*e*). The other reason is that a judgment against the present defendant Aquaslide should in no event be granted unless substantial evidence shows a judgment in the underlying suit would be collectible in whole or ascertainable part. The value of a present judgment wholly derives from the value of the underlying potential judgment. The truth may be in a given case that a judgment against the defendant in the underlying action would be wholly uncollectible, resulting in a complete windfall for a plaintiff if he is granted judgment against the present defendant. The result is not different because the present case is based on reckless misrepresentation. *Sorrels v. Texas Bank & Trust Co.*, 597 F.2d at 1000 (action based on fraudulent misrepresentation). In ascertaining the facts as to collectibility the trial court may allow introduction "of evidence of the [true manufacturer's] worldly circumstances, financial status, assets, insurance coverage, ownership or other interest in real and personal property, etc., to determine the ability of [Smith] to satisfy, in whole or in part, what has been determined to be the [Beecks'] damages." *McDow v. Dixon, supra*, 138 Ga.App. at 341, 226 S.E.2d at 148. *See also Sitton v. Clements*, 257 F.Supp. 63, 67 (E.D.Tenn.1966), *aff'd*, 385 F.2d 869 (6th Cir.1967); *Gladden v. Logan*, 28 App. Div.2d 1116, 284 N.Y.S.2d 920 (1967) (per curiam); *Taylor Oil v. Weisensee*, 334 N.W.2d at 30; *Hammons v. Schrunk*, 209 Or. at 135, 305 P.2d at 409. This process may be difficult, but "difficulty in procuring evidence does not excuse the party upon whom rests the burden of proof from making his case." *City of Emmetsburg v. Central Iowa Telephone Co.*, 250 Iowa 768, 773, 96 N.W.2d 445, 448 (1959).

As to timely raising the question of collectibility, Aquaslide was not required to interpose the issue as an affirmative defense. Collectibility is an element of a *plaintiff's* cause of action. *Pickens,*

*Barnes & Abernathy,* 328 N.W.2d at 526 ("the client has the burden of proving not only the amount of the judgment he would have *obtained* but for the negligence, but also what he would have *collected*").

At the conclusion of the evidence at the instant trial the question was whether the record contained proof of the elements of a cause of action in the Beecks' favor. One of those elements was collectibility, in whole or ascertainable part, from Smith. The trial court permitted the case to be submitted on briefs. Aquaslide's brief properly argued the absence of proof that a judgment against the actual manufacturer would be collectible. The trial court did not adopt this view in its decision, and Aquaslide moved under rule 179(b) of the rules of civil procedure for the court to do so. The court overruled the motion. Under this record Aquaslide presented the collectibility issue in a proper manner.

The Beecks cite *Baker v. Beal,* 225 N.W.2d 106 (Iowa 1975). The present case is distinguishable from *Baker.* There the defendants did not raise the collectibility issue until appeal, and we refused to consider it. *Baker,* 225 N.W.2d at 113 ("Neither in their motion for directed verdict nor in any other way did defendants present this issue to the trial court. Therefore, it cannot be raised for the first time here."). Also, Aquaslide did not transform the issue into an affirmative defense of uncollectibility by arguing the issue in its trial court brief or by its motion under rule 179(b). An affirmative defense is " 'one resting on facts not necessary to support plaintiff's case.' " *Henschel v. Hawkeye-Security Insurance Co.,* 178 N.W.2d 409, 420 (Iowa 1970).

Usually a failure by a plaintiff to prove an element of his case simply requires a decision in favor of the defendant by the trial court or by this court in the event of appeal. A plaintiff should present his entire case at one time; a defendant should not be vexed with more than one trial. *See J.A. Dean & Son v. Goodrich,* 160 Iowa 98, 104, 140 N.W. 435, 437 (1913) (plaintiff has burden of proving allegations in his petition); *see also White v. Grovier,* 237 Iowa 377, 380, 21 N.W.2d 769, 770–71 (1946); *Kellogg v. Rhodes,* 231 Iowa 1340, 1346, 4 N.W.2d 412, 415 (1942) (plaintiff real estate broker failed to prove he was a procuring cause of sale). This rule has been applied where collectibility has not been proven. *Jackson v. Urban, Coolidge, Pennington & Scott,* 516 S.W.2d 948, 949 (Tex.Civ.App. 1974). In these cases the appellate court makes such findings and enters such judgment on the evidence as the lower court should have done.

Particular situations may, however, require a different result. Appellate courts, in the interest of justice, may remand a given case for a new trial on all or some issues on which the evidence was insufficient. *See Southern Farm Bureau Casualty Insurance Co. v. Gottsponer,* 245 Ark. 735, 739–40, 434 S.W.2d 280, 283 (1968) (though plaintiff failed to produce evidence that motorist was uninsured, justice required remand for new trial as record indicated such evidence might well be developed); *St. Louis Southwestern Ry. v. Clemons,* 242 Ark. 707, 712, 415 S.W.2d 332, 335 (1967) (plaintiff failed to produce evidence that railroad employees knew or should have known a condition would result in injury); *Hayes Brothers Flooring Co. v. Carter,* 240 Ark. 522, 526, 401 S.W.2d 6, 8 (1966) (remand for new trial on issue of employment relationship between truck driver and defendant); *Ricker v. Brancale,* 113 Ga.App. 447, 448, 148 S.E.2d 468, 469 (1966) (remand for new trial on issue of damages); *Troendle v. Boudreaux,* 246 So.2d 732, 734 (La.App.1971) (trial court rendered judgment for subcontractor though record contained no competent evidence as to amount owed by contractor; remand as to that issue); *Brown's Velvet Dairy Products, Inc. v. J and H Food Service Inc.,* 123 So.2d 809, 812 (La.App. 1960) (evidence not sufficient to show value of milk cans; appellate court remanded for hearing of further evidence); *Bayles v. McGuffie,* 116 So.2d 211, 212 (La.App.1959) (case remanded with instructions to receive additional evidence so as to minimize likelihood of injustice); *Brautigam v. Hoffman,*

444 S.W.2d 528, 534 (Mo.App.1969) (judgment for plaintiff despite lack of evidence that defendant driver knew or should have known collision was likely; remanded); *Watson v. Meredith Development Co.*, 410 S.W.2d 338, 342 (Mo.App.1966); *Burkard v. Midvale Estates Inc.*, 41 Misc.2d 504, 511, 245 N.Y.S.2d 642, 650 (1963) (new trial ordered to give real estate broker opportunity to introduce evidence failure to close was seller's fault); *Masters v. Alessandro*, 11 Ohio App.2d 191, 192, 229 N.E.2d 110, 111 (1965); *Hartford Accident & Indemnity Co. v. Luper*, 421 P.2d 811, 817 (Okl. 1966) (remanded to allow plaintiff to introduce evidence on amount of loss); *Travelers Insurance Co. v. Employers Casualty Co.*, 380 S.W.2d 610, 615 (Tex.1964) (plaintiff, due to oversight and concentration on legal issue in dispute, failed to present evidence of damages; remanded for new trial as to that issue); *South Side Lumber Co. v. Stone Construction Co.*, 151 W.Va. 439, 447, 152 S.E.2d 721, 726 (1967) ("When ... in a case submitted to the court on a demurrer to plaintiff's evidence, it appears that there has been an omission to adduce all the evidence on the issue upon which the right of recovery depends, and, if the interests of justice will thereby be subserved, this Court will afford an opportunity to a proper development of the merits of the case by reversing the judgment below and awarding a new trial."). In cases analogous to the present one, where a plaintiff's evidence was insufficient and the interests of justice would be served by granting a new trial, we have done so, but with the caveat that such relief will be granted only in most unusual situations. *M–Z Enterprises, Inc. v. Hawkeye-Security Insurance Co.*, 318 N.W.2d 408, 416 (Iowa 1982); *see also Hawthorne v. Delano*, 183 Iowa 444, 446, 167 N.W. 196, 197 (1918); *Bruce v. Galvin*, 183 Iowa 145, 147, 166 N.W. 787, 788 (1918); *Owens v. Norwood-White Coal Co.*, 181 Iowa 948, 949, 165 N.W. 177, 178 (1917).

Is the present case an unusual one in which the parties should be permitted to present evidence to the trial court on the issue of collectibility? *See M–Z Enterpris-*

*es, supra*, 318 N.W.2d at 416 (new trial on single issue of ownership of crane); *Dailey v. Holiday Distributing Corp.*, 260 Iowa 859, 151 N.W.2d 477 (1966) (remand for determination of single issue permissible). The Beecks' insist that they established the elements at trial exactly as we outlined in *Beeck v. Kapalis*, 302 N.W.2d at 94. One of the elements we listed was damages. The Beecks' argue that they read this to mean their own personal injuries—which they proved at length. They thus lay their predicament on collectibility at our door.

As already stated, we do not agree with this analysis of our prior opinion. To prove their damages, the Beecks had to prove they sustained loss. In addition to their own personal injuries, they had to prove they could collect on the cause of action against Smith which they say Aquaslide took from them by misrepresentation. We did not purport to spell out all these issues in the prior opinion, but only those on which the summary judgment was granted by the district court. We did, however, expressly analogize to the malpractice cases in which the collectibility issue is frequently present.

 Normally we would not give these plaintiffs another trial and thus protract this already lengthy litigation. From the Beecks' argument, however, we have no doubt that they did believe the damage issue was established by proof of their own injuries. We conclude that a new trial should be held on the issue of collectibility. The evidence may develop that a judgment against Smith would be collectible, or collectible in ascertainable part, or uncollectible, but that remains to be seen. *See Hawthorne*, 183 Iowa at 446, 167 N.W. at 197. We cannot say on the present record that the Beecks will be unable to produce evidence on the collectibility issue. *See South Side Lumber*, 151 W.Va. at 439, 152 S.E.2d at 721.

(3) As to proof of the Beecks' own injuries, the trial court awarded the following amounts to Jerry Beeck: for loss of past and future earnings, $338,250.87; for past

medical expenses, $165,877; for future medical expenses, $562,190; for past and future pain and suffering and future disability, $2,000,000; and for punitive damages $50,000. The court awarded Judy Beeck Bruinsma $65,000 for loss of consortium.

Amounts of damages are primarily for the trier of fact to determine. *Frantz v. Knights of Columbus*, 205 N.W.2d 705, 712 (Iowa 1973). The trier of fact arrives at particular amounts after seeing and hearing the witnesses and viewing all the incidents of the trial. *Giltner v. Stark*, 219 N.W.2d 700, 709 (Iowa 1974); *Wiles v. Myerly*, 210 N.W.2d 619, 632 (Iowa 1973). We take the evidence in the aspect most favorable to the findings of the trier of fact. *Giltner*, 219 N.W.2d at 709; *Wiles*, 210 N.W.2d at 632.

In arriving at the various amounts of damages the trial court made the following findings which are supported by the evidence:

On July 15, 1972, Jerry Beeck was a healthy, married, full-time employed individual. Following the unfortunate accident he was relegated to a wheelchair to what medical science describe as a quadriplegic, which basically describes a person with an inability to move their body, legs, a portion of their arms, and resulting bladder problems. Mr. Beeck has use of his biceps but not of his triceps, having to rely on gravity to extend his arms downward. Quite reasonably he has experienced past pain and suffering and will, for life, suffer the same. This status was described by a neurological surgeon, Dr. Robert C. Jones, who attested to and proves the permanent disability of Jerry Beeck. This victim permanently has no bowel or bladder control. He will require custodial care and medical attention until death, which, according to the Mortality table, Code of Iowa, Volume III, page 3734, is 33.07 years. Dr. Jones testified that normally quadriplegics do not live as long as normal individuals. The quality of custodial and medical care is related to longevity. Dr. Jones there-

fore could not estimate the number of years remaining for Mr. Beeck. Further testimony, later to be described, convinces the Court that he had, is and will receive adequate attention and care. The Court further finds that Dr. Jones did not, through testimony, reduce longevity from the Mortality schedule. Therefore, this Court will utilize, in computations of the elements of recovery, 33.07 years of life remaining.

Immediately following the accident Mr. Beeck was taken by ambulance to a local hospital and in several hours removed to the University of Iowa Hospital where he remained in intensive care for approximately one week and in traction for 12 weeks.

On October 19, 1972, Mr. Beeck was transferred to Craig Hospital, Englewood, Colorado, for rehabilitation. Initially the hospitalization was concerned with adjusting to disability. Occupational therapy was also involved. A right hand brace, still utilized, is shoulder driven, cable hinged. Some of the therapy involved learning to type with sticks, push button phone and independent feeding after the food was set up on a place and the meat cut.

On February 13, 1973, Jerry Beeck and his wife Judy Beeck, who had been with Jerry constantly since the accident, left Craig Hospital and returned to LeMars, Iowa. While at Craig, Mrs. Beeck was daily involved in the therapy and rehabilitation training preparatory to existence outside of a hospital. Since he slept on his stomach, she learned to turn him over, provide sponge baths, dress him, change the catheter connection, assist him in and out of the wheelchair. She was taught to daily assist him on and off a commode and promote his bowel program by digital circular finger motion. He, to date, has problems of bowel control, forcing constant diet attention. On two separate occasions Mr. Beeck has returned to Craig Hospital for one week stays.

Over the years he has regained strength in his shoulders and arms. He still has limited motion but no more movement. He is able to slightly flex his wrists; has feeling in his shoulders and biceps but practically none in his hands and can burn his hands with little, if any, feeling. Once each hour he leans over sideways shifting his weight to promote circulation from sitting constantly in a wheelchair. He has had to undergo surgery to remove dead tissue caused by lack of circulation.

In the spring of 1974 the Beecks built a home in LeMars, designed to and constructed for easier access for Jerry. Due to the dissolution, Mrs. Beeck moved out of the family home in August 1976 and moved to Lincoln, Nebraska. From the date of the accident to their separation the total absence of sex was due to Mr. Beeck's injuries.

Mr. Beeck has had constant daily medical and custodial care to date, afforded by his ex-spouse, nursing home and hired employees, including his present sister-in-law, Donna Beeck. For the past approximate eight months she has provided the daily care for compensation of $225.00 per week. She and her husband, Jerry Beeck's brother, live in close proximity to Mr. Beeck. Daily she goes to his home and prepares and serves him breakfast. Each morning she provides daily bowel care treatment, the same as Judy Beeck had provided. He then is bathed and assisted in dressing. Daily medication is then administered, which includes an insulin injection. She then slides him into his wheelchair. Between 1:00 p.m. and 3:00 p.m. she returns to empty the catheter receptacle. His present catheter is an internal one through the stomach that is changed once a month. Later she returns, prepares and serves supper. Each evening at approximately 11:00 p.m. she once again returns to prepare and assist Mr. Beeck for his night retirement. At least once a week she has had to proceed, during the night, to his house and administer care.

In decent weather Mr. Beeck attempts to go outside. He spends a lot of time reading, watching television and writing letters. He hopes that in several years he may be able to perform, at his home, some computer programming employment.

The total medical, hospital, physician, custodial and accessories expenditures from July 15, 1972, to date, stipulated as reasonable and in consequence of the accident, is the sum of $165,877.00.

Warren Adams, a qualified actuary and professor at Drake University, Des Moines, Iowa, provided his opinion concerning loss of Mr. Beeck's future wages, present value, to be $338,250.87. Computations of future medical expenses for Mr. Beeck was fixed, by Mr. Adams, at $562,190.00.

Aquaslide contests each element of damages, and the Beecks cross appeal claiming the award for loss of consortium was inadequate. The questions, except for punitive damages, relate to the damages which would have been originally recoverable from Smith.

(a) Loss of earnings. Aquaslide argues that the court erred in awarding Jerry Beeck $338,250.87 for lost wages, past and future, because (1) no evidence was introduced that future interest and inflation rates would offset each other, (2) no reduction was made for payroll taxes, (3) no support exists in the record that Jerry Beeck would have worked until age sixty-five, and (4) no evidence leads to the conclusion that Beeck has permanently lost all earning capacity.

Professor Adams testified that the award for future earnings should be increased by future inflation and then reduced to reach present value but that such a process was not necessary because the two rates created a standoff and $338,-250.87 took into account both inflation and discount. The professor's process was permissible if future inflation was shown by the evidence. *Schnebly v. Baker*, 217 N.W.2d 708, 728 (Iowa 1974). Aquaslide

claims the record does not support Adams' assumptions in several particulars. Each particular, however, goes to the sufficiency of the data upon which Adams rested his opinion, as distinguished from facts which qualified him to state an opinion at all. Thus the trial court could consider the points raised by Aquaslide in determining the weight, if any, which should be given to Adams' testimony. *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 659 (Iowa 1969). Sufficient support existed for the finding that future inflation rate and the discount rate offset each other.

▇ We likewise find sufficient support for the finding that Beeck would have worked until age sixty-five but for the injuries, and that he is permanently disabled.

▇ Aquaslide's contention has merit, however, that the effect of tax deductions on Beeck's past and future earnings must be taken into account. The trial court erred in failing to do so. *See Adams v. Deur*, 173 N.W.2d 100, 105 (Iowa 1969). This effect on damages must be considered on remand.

▇ (b) Future damages. Aquaslide contends that Beeck's medical expenses are unlikely to remain as high as $17,000 a year, that use of the same life expectancy table for quadriplegics as for non-quadriplegics was error, and, again, that no support exists for a ruling that future inflation and interest rates offset each other. We find substantial evidence as to future medical costs as well as testimony that with proper medical care the life expectancy of a quadriplegic is not necessarily less than that of others. We have already dealt with Aquaslide's inflation rate-discount rate argument.

▇ (c) Pain, suffering, and disability. The court awarded Beeck $2,000,000 for past and future pain and suffering and for future disability. Aquaslide claims this award is excessive because it is considerably more than $1,725,000, the amount sought as total damages in the original lawsuit against Aquaslide.

In general, the Beecks may have judgment only for the amount for which they would have had judgment in an original lawsuit against Smith. *See Pickens, Barnes & Abernathy v. Heasley*, 328 N.W.2d 524, 526 (Iowa 1983). The present action is not founded on the prior action against Aquaslide that *was* filed. It is predicated on the alleged wrongful loss of an action against Smith, because of the statute of limitations, that was *not* filed. The prior action against Aquaslide was for $1,725,000. That fact is some evidence an action against Smith at the time would have been in the same amount. It is not, however, conclusive. Had the Beecks sued Smith they could have sued for a larger amount, or when they got into the preparation and trial of the suit against Smith they could have amended to enlarge their prayer notwithstanding the intervening expiration of time under the statute of limitations. Such an amendment would have been "germane" to the original cause of action. *Swartz v. Bly*, 183 N.W.2d 733, 737 (Iowa 1971).

By showing that the original action against Aquaslide was for $1,725,000, Aquaslide developed a persuasive argument on the facts that an action against Smith would have been for that amount. But that fact does not appear as a matter of law, and the trial court in the present case was not required to impose a cap of $1,725,000.

Aquaslide also asserts that an award for future disability duplicates the award for future earnings, but it has not demonstrated error on this point. *See Schnebly v. Baker*, 217 N.W.2d 708, 726 (Iowa 1974).

Two other arguments raised by Aquaslide are without merit.

▇ (d) Past medical expense and lost earnings. Substantial evidence supports the trial court's findings as to past medical expenses; we therefore uphold that award. As previously held as to future earnings, past earnings are to be considered on remand in light of tax consequences.

(e) Punitive damages. Aquaslide objects to the award of $50,000 in punitive damages. We have stated: "Punitive damages are justified where a defendant acts maliciously. The malice may be actual (express), such as personal spite, hatred, or ill will, or it may be legal (implied), as where the defendant acts illegally or improperly with wilfull or *reckless disregard* for another's rights." *Freeman v. Bonnes Trucking, Inc.,* 337 N.W.2d 871, 879–80 (Iowa 1983) (emphasis added). *See also Holcomb v. Hoffschneider,* 297 N.W.2d 210, 214–15 (Iowa 1980); Restatement (Second) of Torts § 908 (1979). According to the findings, the conduct of Aquaslide involved reckless disregard of the Beecks' rights. We cannot say the trial court abused its discretion in allowing punitive damages.

(f) Pro tanto reduction. Aquaslide argues that a settlement of $50,000 paid by Kimberly Village Homeowners' Association should be credited against the Beecks' recovery from Smith and therefore must be credited against their recovery from Aquaslide.

Consideration received from a joint tortfeasor reduces pro tanto the recovery against the other tortfeasors. *Wadle v. Jones,* 312 N.W.2d 510, 512–14 (Iowa 1981). This includes a party the plaintiff could have sued but in fact did not, such as Kimberly Village, though it does not include payments by non-wrongdoers. *Greiner v. Hicks,* 231 Iowa 141, 147, 300 N.W. 727, 731 (1941). Aquaslide is entitled to the reduction on remand.

III. *Loss of consortium.* Judy Beeck Bruinsma sought $500,000 for loss of consortium. The trial court awarded her $65,000. Two issues arise in regard to this award.

A. A court dissolved the Beecks' marriage on December 29, 1976. At that time all rights acquired by marriage were forfeited unless "specifically preserved in the divorce decree." Iowa Code § 598.20 (1975). We have held that a loss of consortium claim is a "right acquired by marriage" and that it is forfeited unless specifically preserved. *Michael v. Harrison County Rural Electric Cooperative,* 292 N.W.2d 417, 420 (Iowa 1980). The question raised by Aquaslide is whether pertinent language in a stipulation entered into by the Beecks and incorporated in the divorce decree, *see Bowman v. Bennett,* 250 N.W.2d 47, 50 (Iowa 1977), *specifically* preserved the loss of consortium claim. The language reads:

That it is agreed by and between the parties herein and this Stipulated Agreement constitutes its acknowledgement that both Petitioner and Respondent are jointly involved in civil litigation pertinent to personal injury or injuries sustained to Respondent in an accident unrelated to this dissolution of marriage action with litigation in both State and Federal Court systems. Petitioner and Respondent herein acknowledge that they have employed John A. McClintock, Esquire, of the firm of Hansen, Wheatcraft & McClintock, Des Moines, Iowa as per this civil litigation and both parties herein will cooperate with one another and with their counsel of record as per this litigation until the completion thereof. Any and all monies as may be received or any and all indebtedness as may accrue as per this litigation shall be divided by and between the parties in a manner commensurate with their particular demand and recovery in the event such litigation be successful or the parties shall split the costs of such action in the event there be no recovery as per the recommendation of their counsel of record.

Aquaslide argues this language nowhere (1) specifies the accident to which it refers, (2) identifies the specific courts in which litigation is said to be ongoing, (3) identifies the other parties or potential parties to the litigation to which it refers or the nature of the claims by or against them, (4) states how Judy Beeck is "jointly" involved in the litigation or specifies the nature of the claims on which she has sued or been sued, or (5) discloses any intention to preserve any right of Judy that might otherwise be

forfeited such as a claim for loss of consortium. In support, Aquaslide cites *Ohlen v. Harriman,* 296 N.W.2d 794, 795 (Iowa 1980); *Michael,* 292 N.W.2d at 420; and *Van Ellen v. Meyer,* 207 N.W.2d 552, 553 (Iowa 1973). In each of those cases, however, a claim had *not* been preserved and the issue was whether a particular claim *had to be* preserved. Here the issue is this: given that the claim *had to be* preserved, *was* it preserved?

The word "specify" means "to mention specifically or explicitly, to state in full and explicit terms or explicitly and in detail, namely expressly, distinctly and particularly ... to point out, to particularize, to designate by words one thing from another." *A.M. Dillow & Co. v. City of Monticello,* 145 Iowa 424, 431, 124 N.W. 186, 189 (1910). Contrary to the conclusion reached by Aquaslide and despite the absence of words that "the loss of consortium claim is specifically preserved", the quoted language sufficiently specifies an intent to preserve the loss of consortium claim. The manifest purpose for the insertion of this language was to acknowledge and preserve causes of action. At the time the decree was entered, the Beecks had already brought civil litigation against Aquaslide as the manufacturer of the slide. Included was a cause of action for loss of consortium. The Beecks, in the decree, acknowledged that *they* had hired an attorney, that *they* would cooperate with *their* counsel, and that *they* would share in recoveries "commensurate with *their* particular demand ...." (Emphasis in quotation added.) We ascertain no apparent reason for reference to *their* counsel and *their* demands unless reference was to both spouses' causes of action.

An unduly technical application of the words "specifically preserve" would not further a purpose of providing notice to the public and to each of the parties as to what marriage-based rights were retained. This is particularly so where the language chosen by the parties for use in the decree appears to have been selected to meet the statutory requirement and is susceptible of no other reasonable interpretation.

B. The Beecks contend on their appeal that $65,000 is inadequate to compensate Judy Beeck Bruinsma for loss of consortium. They cite *Ossenfort v. Associated Milk Producers, Inc.,* 254 N.W.2d 672 (Minn.1977). In that case a wife of a quadriplegic was awarded $500,000. A comparison of verdicts, however, is of little value in determining whether an award in a particular case is excessive or inadequate. *Oldsen v. Jarvis,* 159 N.W.2d 431, 435 (Iowa 1968). The present factual context is considerably different from that in *Ossenfort.* We do not disturb the trial court's award.

IV. *Prejudgment interest.* The trial court awarded interest on the judgment at the statutory rate of ten percent from the date Beecks' present action against Aquaslide was commenced, February 4, 1977. The court did so on the basis of section 535.3 of the Iowa Code of 1981. The section in that form became effective January 1, 1981, and reads in pertinent part as follows:

> Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year.... The interest shall accrue from the date of the commencement of the action.

This section applies only to judgments entered of record on and after January 1, 1981. *Janda v. Iowa Industrial Hydraulics, Inc.,* 326 N.W.2d 339, 342 (Iowa 1982); *Sheer Construction, Inc. v. W. Hodgman and Sons, Inc.,* 326 N.W.2d 328, 334 (Iowa 1982). *See also Rowen v. LeMars Mutual Insurance Co.,* 347 N.W.2d 630 (Iowa 1984). The court entered the Beecks' judgment against Aquaslide on May 21, 1982.

Aquaslide argues on several grounds that section 535.3 should not have been applied under present facts. Initially it contends that the previous, lower statutory interest rate should apply because it had no opportunity to try this case between enactment of new section 535.3 on March 28, 1980, and the effective date, January 1, 1981. The General Assembly set the effective date as it did, as opposed to July 1,

1980, to enable litigants to avoid the retrospective effect of the statute by "an *orderly* disposition of cases pending March 28, 1980, before the new interest rate would affect them." *Janda*, 326 N.W.2d at 344 (emphasis added).

The retrospective application of section 535.3 as mandated by the legislature contemplated that some cases would not be capable of an orderly disposition during the grace period; the new interest rate would apply to them. This was such a case, as it was on appeal at the time. The appeal was taken by the Beecks, who sought reversal of a summary judgment entered in favor of the defendants including Aquaslide. *See Beeck v. Kapalis*, 302 N.W.2d 90 (Iowa 1981). To sustain Aquaslide's argument would require us to overturn our decision in *Janda* and to decide that section 535.3 cannot be applied retrospectively. We are not inclined to do so.

■ Aquaslide next contends that application of section 535.3 would be unduly harsh as interest would be awarded on expenses before they occurred and Beeck would be overcompensated. This argument would have merit if an issue of duplicative damages existed or if damages were not properly reduced to present value. Here, however, the effect of section 535.3 is merely to recognize that all recoverable damages are due and owing on the date a lawsuit is commenced. That is the date, as determined by the General Assembly, the Beecks were entitled to the use of their damage award. We have already addressed the argument of duplication. We thus reject Aquaslide's contention.

■ Aquaslide also argues that the Beecks were granted permission to amend their prayer for damages from $1,750,000 to $3,500,000 on May 15, 1981, and such date should be used as the "commencement date" of the lawsuit, citing *Coachmen Industries, Inc. v. Security Trust & Savings Bank*, 329 N.W.2d 648, 651 (Iowa 1983). That case, however, concerned an amendment to a petition to add a distinct new claim. In the present situation the Beecks set forth more specifically and enlarged the damages that flowed from their original claim. Such an amendment relates back to the original filing date, here February 4, 1977. *See Anderson v. Acheson*, 132 Iowa 744, 110 N.W. 335 (1907).

■ Aquaslide also contends that retrospective application of section 535.3 in this instance violates substantive due process under both the United States and Iowa Constitutions, as the application is arbitrary, capricious, and unduly harsh and oppressive. We find that section 535.3 is rational in that it was intended to solve a problem: market interest rates prevailing before the 1980 amendment to section 535.3 were higher than the seven percent then provided, encouraging delay in trials and appeals. *Janda*, 326 N.W.2d at 344. As a result of the retrospective application, Aquaslide is merely required to pay an interest rate more closely related to the market value of the use of money. We find neither a lack of rationality nor oppressiveness in such a scheme.

■ The Beecks argue on the other side that interest should accrue from October 15, 1973, the date they filed their complaint in federal court against Aquaslide as manufacturer. We reject this argument. This action against Aquaslide is for fraudulent misrepresentation and was commenced on February 4, 1977. It is distinct from the lawsuit filed October 15, 1973.

V. *Contribution.* Aquaslide also appeals from the trial court's dismissal of its third-party action for contribution from Employers Mutual Casualty Company, Illinois-Iowa Claim Service, Incorporated, and Vincent E. O'Toole. The trial court stated that "[c]ontribution is not available in cases where the underlying cause of action is recklessness in making a representation that amounted to fraud."

Employers Mutual was one of three insurance companies that initially investigated the accident and reported that the slide was manufactured by Aquaslide. Illinois-Iowa Claim Service and O'Toole did the actual investigating.

 The doctrine of contribution has equitable underpinnings. We hold that Aquaslide's recklessness was of sufficient culpability to disqualify it from contribution. As stated in Restatement (Second) of Torts § 886A, Comments *j* and *k* (1979):

*j. Intentional and reckless tortfeasors.* In the absence of statute, the courts have adhered to the original English rule that no right of contribution arises in favor of one who has intentionally caused harm to another. The basis of the rule is the old one that the courts will not aid one who has deliberately done harm, so that no man can be permitted to found a cause of action on his own intentional tort. This rule has been modified, however, to permit contribution in favor of one who is charged with a purely technical tort without any real intent to do harm, as in the case of one who has intentionally entered the land of another and so become liable for trespass in the innocent belief that the land is his own. On the same basis, one who has become liable for conversion by reason of his bona fide purchase of stolen goods may be allowed contribution.

It is not enough for the application of the rule stated in Subsection (3) that the tortfeasor seeking contribution has intentionally violated a statute as by driving at a speed in excess of the statutory limit or parking next to a fireplug, if his conduct is not intended to do harm to anyone.

*k.* The same rule has been applied to conduct that is not intended to do harm but is reckless, or as it is sometimes called, "wilful" or "wanton." (See § 500). This conduct usually approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it. Here again, however, the principles of equity are to be taken into account; and if, for example, the automobile guest statute of a particular state has been interpreted in such a manner that "wilful" or "wanton" misconduct under its provisions has become no more than a high degree of ordinary negligence without the mental element of the deliberate and conscious, it does not follow that contribution is necessarily to be denied in the particular case.

*See Cage v. New York C.R.R.*, 276 F.Supp. 778 (W.D.P.), *aff'd*, 386 F.2d 998 (3rd Cir. 1967); *Hardware Mutual Casualty Co. v. Danberry*, 234 Minn. 391, 397, 48 N.W.2d 567, 571 (1951) (characterized as "wilful negligence").

The trial court did not err in denying contribution.

VI. *Unresponsive answers.* Finally, the trial court overruled three motions by Aquaslide to strike answers to its questions on cross-examination. The ground of the motions was that the answers were unresponsive. Aquaslide contends that prejudice is to be presumed from the trial court's refusal to sustain the motions.

 A trial court should strike unresponsive answers on motion of the interrogator. *Miller v. Mutual Fire & Tornado Ass'n*, 219 Iowa 689, 697–98, 259 N.W. 572, 576 (1935). Where, however, reversal is sought because the motion is erroneously overruled, prejudice must exist. A presumption of prejudice will not suffice if the record demonstrates lack of prejudice. *Ceretti v. Des Moines Railroad Co.*, 228 Iowa 548, 553, 293 N.W. 45, 46 (1940). This rule applies in situations in which a witness has not properly responded to a question. *See Lewis v. Gagne*, 123 Vt. 217, 220, 185 A.2d 468, 470 (1962) (unresponsive answer usually calls for such action by the court as justice may require, and ordinarily will not produce reversible error); *Cornwell v. State*, 6 Md.App. 178, 184–85, 251 A.2d 5, 9 (1969) (court's reaction to unresponsive answer is within its sound discretion, absent showing of prejudice to rights of accused); *Brown v. Wong Gow Sue*, 354 Mass. 646, 649, 241 N.E.2d 919, 921 (1968) (assuming answer was unresponsive, the judge was not required to strike it if it was relevant). The case law cited by Aquaslide does not pertain to the issue of unresponsive answers, nor does it pertain to situations

where the evidence is merely duplicative or collateral, as was the case here. We do not find prejudice.

VII. *Disposition.* The trial court is directed to proceed as follows upon remand on the basis of substantial evidence and the standard of proof we have stated:

First, make a supplemental finding on the original record as to the total adjusted amount of the damages of Jerry A. Beeck by making adjustments, in accordance with divisions II–D(3)(a) and (d) of this opinion, to his damages as originally found by the trial court.

Second, make a supplemental finding deducting a total of $50,000 from the total adjusted amount of the damages of Jerry A. Beeck and from the damages of $65,000 of Judy Beeck Bruinsma, making the respective deductions from those two damage amounts in the same proportions as those two damage amounts bear to each other— all in accordance with division II–D(3)(f) of this opinion. We will refer to the respective lesser damage amounts in consequence of these deductions as the "reduced amount of Jerry's damages" and the "reduced amount of Judy's damages."

Third, make a supplemental finding on the original record as to whether Aquaslide did or did not establish that Smith was estopped to assert the statute of limitations against the Beecks, as considered in division II–D(1) of this opinion.

Fourth, hold a new trial to the court solely on the issue of whether a judgment against Smith for the reduced amount of Jerry's damages plus the reduced amount of Judy's damages would have been collectible from Smith in whole or in ascertainable part; and then make a supplemental finding (a) that such a judgment (1) would have been collectible in whole or (2) would have been collectible in ascertainable part (stating the amount of such part), or (b) that the Beecks have failed to establish such a judgment would have been collectible in whole or in ascertainable part—all in accordance with division II–D(2) of this opinion.

Fifth, enter a supplemental judgment in place of the original judgment, as follows:

(a) If the trial court has found Aquaslide did not establish that Smith would have been estopped to assert the statute of limitations and has also found the Beecks established that a judgment against Smith would have been collectible in full for the reduced amount of Jerry's damages and the reduced amount of Judy's damages, the court shall enter supplemental judgment against Aquaslide for the respective amounts of Jerry's reduced damages and Judy's reduced damages, together with interest and costs. If the court has made the same supplemental findings except that it has found the Beecks established a judgment against Smith would have been collectible in an ascertainable part, the court shall enter judgment against Aquaslide for the amount of that part, together with interest and costs, dividing that part between Jerry A. Beeck and Judy Beeck Bruinsma in the same proportions that the reduced amount of Jerry's damages and the reduced amount of Judy's damages bear to each other.

(b) But if the trial court has found Aquaslide established that Smith would have been estopped to assert the statute of limitations or if the trial court has found the Beecks did not establish that a judgment against Smith for the reduced amount of Jerry's damages and the reduced amount of Judy's damages would have been collectible in whole or in ascertainable part, the court shall enter supplemental judgment dismissing the Beecks' petition and assessing the costs to them.

Costs on this appeal are assessed three-fourths to Aquaslide and one-fourth to the Beecks.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.